Argued March 5, affirmed May 31, petition for rehearing
denied June 25, 1968

JENSEN, *Appellant, v.* MEYERS ET AL,
*Respondents.*

441 P. 2d 604

*Charles D. Burt,* Salem, argued the cause for appellant. On the brief were Brown and Burt, Salem.

*Robert Ringo,* Corvallis, argued the cause for respondent Meyers. On the brief were Ringo, Walton & McClain, Corvallis.

*Asa L. Lewelling,* Salem, argued the cause and filed a brief for respondents Welch.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

O'CONNELL, J.

This is an action to recover damages for personal injuries. The trial court granted defendants' motions for a directed verdict and entered a judgment for defendants. Plaintiff appeals.

Plaintiff, aged nine, accompanied by his uncle and three other children, came to visit Mr. and Mrs. McConnell at their residence in Dallas, Oregon. The McConnells were in possession of the premises as lessees of the defendants.[①] Plaintiff and the other children were told by their parents to go out and play. The children went into the garage and began playing with an old printing press left there by defendant Meyers. Plaintiff's hand was injured when it was

---

① The lease was executed by defendant Meyers. The record title to the property was in defendants Norman Welch and Marjorie Welch, Meyers' daughter. Meyers had owned the property but being unable to make the mortgage payments on it transferred title to the Welches who assumed the mortgage. The Welches agreed that in the event of a sale of the property the net proceeds would be divided. It was also agreed that Meyers would act as Welches' agent in finding a lessee for the property. The case is presented to us on the theory that defendants were joint owners and joint lessors of the property and we shall so regard them.

caught between the fly wheel and the driving arm of the press.

The press was an obsolete piece of equipment weighing about a half ton. At the time the premises were leased there were two presses in the garage, but shortly after the lease was executed Meyers removed one of them. Mr. McConnell testified that at the time the one press was removed Meyers said that he would also remove the other. McConnell knew that the press was in the garage. During the period of the lease Meyers entered upon the premises on a few occasions to make repairs and to remove articles belonging to him. In addition to the printing press, Meyers left other articles on the premises including two lawn mowers, a band saw, and a boat. There is nothing in the record to indicate whether he was authorized or obligated to remove these and other articles.

■ Subject to certain exceptions "a lessor of land is not liable to his lessee or to others on the land for physical harm caused by any dangerous condition, whether natural or artificial, which existed when the lessee took possession." Restatement (Second) of Torts, § 356 (1965).[2] The comment appended to Section 356 explains the lessor's non-liability on the ground that "when the land is leased the law of property regards the lease as equivalent to a sale of land for the term of the lease," and thus the lessor stands in the same position as the grantor of property who, it is well

---

[2] Prosser on Torts, § 63 at p. 411 (3d ed 1964); 2 Harper & James on Torts, § 27.15 at p. 1505 (1956).

The exceptions to this general rule are explained in Sections 357-362, Restatement (Second) of Torts (1965) and cover the situations where lessor contracts to repair, where there is an undisclosed dangerous condition known to lessor, where land is leased for a purpose involving admission of the public, where

established, is not liable for injuries occurring after the transfer of title.[3]

The property concept standing alone is not a satisfactory explanation for immunizing the lessor from liability. As observed in 2 Harper & James, § 27.16 at p. 1509 (1956), "it is no part of the general law of negligence to exonerate a defendant simply because the condition attributable to his negligence has passed beyond his control before it causes injury (if the injury was foreseeable at the time defendant still had control)."

However, the immunity of the lessor may be rested upon grounds other than the mere transfer of a property interest to the lessee. Granting that one may, under certain circumstances, be liable for a condition attributable to his negligence which "has passed beyond his control" as Harper & James point out, it does not follow that control is never a significant factor in allocating liability. The exceptions engrafted upon the lessor's immunity from liability appear to be based principally upon the ground that the hazard created by the lessor is not likely to be remedied or immunized by the lessee and thus the lessor is made liable upon the well accepted principle that one is liable for reasonably foreseeable harms.[4] But this is not to say that

parts of the land are retained in lessor's control which lessee is entitled to use, where part of the land is retained in lessor's control but is necessary to the safe use of the part leased, and where lessor negligently makes repairs.

[3] 2 Harper & James on Torts, § 27.15 at p. 1510 (1956). See also Note, 62 Harv L Rev 669 (1949).

[4] The unlikelihood of lessee remedying the hazardous condition, particularly the lessee under a short term lease, is normally present where the premises are in a ruinous state or where lessor agrees to repair or negligently repairs, or where there is an un-

the lessor should be liable in every case where a dangerous condition exists at the time of leasing. the premises. As one court has expressed it, "* * * the nature of the defect might be such that the landlord would reasonably expect that the tenant would take steps to remedy the defect or otherwise to safeguard persons entering them at his invitation."[5]

The present case does not fall within any of the recognized exceptions to lessor's non-liability. The only possible argument for bringing these facts within an exception would be on the theory that Meyers' declaration of his intent to return and remove the press induced the McConnells to forego any effort to remedy the hazard. This theory would have some merit if, as in the case of a promise by lessor to repair, there was an assurance that lessor would act to remove the hazard. But Meyers' declaration in this case was not an agreement to remove the press; at most it was a general indication of Meyers' intention which gave no assurance as to when, if ever, the hazard would be removed.

■ The mere fact that the hazard could have been eliminated by Meyers does not make him liable for plaintiff's injuries. The hazard could likewise have been eliminated by the McConnells. The McConnells had the opportunity not only to render the machine harmless by covering it or immobilizing the moving parts, but they were also in a position to warn their

disclosed dangerous condition known to the lessor, or where lessor retains control of a part of the leasehold which lessee is entitled to use. Where the premises are leased for purposes involving the admission of the public, the additional factor of the magnitude of the risk is present.

[5] Webel v. Yale University, 125 Conn 515, 524, 7 A2d 215, 123 ALR 863 (1939).

guests of the danger and to exercise control of activities on the premises so as to keep them away from the known danger. We are of the opinion that the lessor should not be liable under these circumstances on the ground that he should be entitled to expect that the lessee will take the necessary steps to eliminate the hazard or to warn his guests of the danger.

The present case is to be distinguished from the recent case of *Flint v. Snow,* 249 Or 509, 439 P2d 610 (1968). That case involved the duty of a lessor to persons outside of the leasehold premises for harm caused by a dangerous condition of a part of the premises the control of which was retained by the lessor. In the present case the harm resulted to a person on the leasehold premises. Moreover, the lessor did not retain control of any part of the leasehold.

The judgment of the trial court is affirmed.

McALLISTER, J., dissenting.

It is conceded that the printing press left on the leased premises by the landlord was a dangerous instrumentality, attractive to children. The printing press was not leased to the tenant, nor abandoned on the premises. It was stored on the leased premises for the benefit of the landlord, with the consent of the tenant.

The landlord had either exclusive control of the printing press or joint control with the tenant. Although the landlord should have foreseen the probability that children would be attracted to the machine and be injured by it, he took no precaution to prevent such harm.

If the press had been stored at defendant's home and a child injured thereby, the defendant would be

liable. If the press had been stored by the defendant in a vacant lot and a child injured thereby, the defendant would be liable. *Burroughs v. Pacific Tel. & Tel. Co.,* 109 Or 404, 220 P 152 (1923). Why does the landlord acquire immunity by storing the dangerous press in his home and leasing his home to a tenant, when he retains control over both the press and that portion of the premises in which it is stored? The landlord had the same right to make the condition safe both before and after the premises were leased. He consequently had the same duty to make the condition safe both before and after the premises were leased.

Only last month we held in *Flint v. Snow,* 249 Or 509, 439 P2d 610 (1968), that a landlord who retained joint control of leased premises was liable for damages caused by a dangerous condition (a defective fence) of which he had knowledge when he leased the premises. In the *Flint* case we cited *Nash v. Goritson,* 174 Or 368, 372, 373, 149 P2d 325 (1944), which held that the liability of a landlord depended on the control of the instrumentality that caused the injury. In the case at bar the reservation by the landlord of control over the instrumentality that caused the injury is conceded. Why did we reach one conclusion in *Flint v. Snow* and a completely contrary conclusion in this case? The dispositive element of control by the landlord is identical in both cases.

This is not a real property case. The owner of the press is not liable for a defective condition of the leased premises. He is liable because he left a dangerous instrumentality for which he had continuing responsibility in a location where children would be attracted to it and be injured thereby. He was aware of the condition and the unreasonable risk involved

and could have made the condition safe, but failed to do so.

I dissent.

SLOAN and HOLMAN, JJ., concur in this dissent.