Argued and submitted April 10, affirmed June 24, 1987

## CATALE et al,
*Appellants,*

*v.*

## VANPORT MANUFACTURING, INC.,
*Respondent.*

(A8405-02878; CA A40131)

738 P2d 599

Robert K. Udziela, Portland, argued the cause for appellant. With him on the briefs were Jan Thomas Baisch, Portland, and Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland.

Michael S. Sommers, Portland, argued the cause for respondent. With him on the brief was Frank E. Day, Portland.

Before Warden, Presiding Judge, and Joseph, Chief Judge,* and Van Hoomissen, Judge.

VAN HOOMISSEN, J.

---

* Joseph, C. J., *vice* Young, J.

## VAN HOOMISSEN, J.

This is an action for wrongful death. Plaintiffs appeal from a trial court judgment granting defendant summary judgment. The question is whether a genuine issue of fact exists as to whether defendant, the owner of the real property on which plaintiffs' child drowned, exercised sufficient control over the property to be responsible for the child's death. The trial court ruled that defendant exercised insufficient control over the property to be responsible. We affirm.

Vanport Manufacturing, Inc. (Vanport) operates a sawmill in Boring. Hertrich is Vanport's president and sole stockholder. Classen, Vanport's mill manager, is responsible for the operation of the mill.[1] He directly manages the day shift and usually stays at the mill until the night shift begins. He is on call and sometimes is called back to the mill.

When Vanport hired Classen to manage its mill, it agreed, as an incentive to Classen, to finance his house. Hertrich and Classen signed an earnest money agreement to purchase a home in Estacada for $68,597. Vanport purchased the home out of its operating capital and gave it to Classen to use, with an agreement that he would pay Vanport the purchase price if he left Vanport's employment. Vanport held title to the home and paid the taxes on it. Later, Hertrich, as Vanport's president, gave Classen an option to buy the home for $69,500.

Classen later decided to move to Eagle Creek. Vanport again agreed to assist him with financing the purchase of a home there. Vanport purchased a home and property in Eagle Creek for $107,000. Hertrich testified that the proximity of the Vanport mill to the Eagle Creek house was not a consideration in its purchase. Classen's Estacada house was taken in trade as part of the purchase price. Classen was credited with the equity that had built up in the Estacada house. Vanport paid $10,181 toward the purchase price of the Eagle Creek property and assumed a contract balance of $15,275.33. Classen did not repay any of the $68,597 paid by Vanport for the Estacada house. Later, he and Vanport entered into an agreement whereby Vanport agreed to sell

---

[1] The record on summary judgment comes from plaintiff's complaint and the depositions of Hertrich and Classen.

Classen the Eagle Creek property for $95,000 "as soon as [Classen] is financially able or within one year of his termination of employment [with Vanport]." That agreement was notarized and was made the basis of the sale between Classen and defendant. Vanport has paid the taxes on the Eagle Creek property, has included the property on its insurance policy and has depreciated the property on its income tax returns. Classen made further improvements to the Eagle Creek property of about $30,000.

In 1981, Classen dug a pond on the Eagle Creek property. In 1983, plaintiffs' decedent, then six years of age, drowned while playing in the pond. Plaintiffs filed this action against Vanport for wrongful death. They alleged in their complaint that Vanport knew, or had reason to know, that single family houses occupied by children were within a quarter mile of the Eagle Creek property and that those children frequently came on the property to play in the pond. Vanport denied that it had any knowledge of the pond that Classen had built and asserted that Classen did not seek its permission to build the pond. Vanport moved for summary judgment. The trial court concluded that any control Vanport exercised over the Eagle Creek property was insufficient to hold it liable and it granted Vanport's motion.

Defendant, the party moving for summary judgment, had the burden of showing that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. The record on summary judgment is viewed in the light most favorable to the party opposing the motion, in this case plaintiffs. *Stanfield v. Laccorace,* 288 Or 659, 665, 607 P2d 177 (1980).

■    In the absence of an agreement to the contrary, a lessor of premises is generally not responsible to persons on the land for conditions which develop or are created after possession has been transferred. *Nagel v. Landels,* 271 Or 122, 130, 530 P2d 1239 (1975). However, if the landowner retains some right to control the use of the premises, there may be liability. *Flint v. Snow,* 249 Or 509, 439 P2d 610 (1968). In that case, the lessor had retained the right to use or to lease to another a portion of the pasture on the leased land. The Supreme Court held that, because the evidence on the question of control was in conflict, it was proper for the trial court

to permit the jury to decide whether the lessor had retained sufficient control over the property to be liable for plaintiff's injuries.

■ The evidence in this case is not in dispute. Vanport purchased the Eagle Creek property as an incentive to keep Classen on the job. The property was purchased with Vanport's money, and it paid the taxes and insurance on the property and depreciated it on its tax returns. As a practical matter, Classen lives there rent free. However, the record on summary judgment contains no evidence that Vanport retained any right to control the Eagle Creek property, that it has exercised any control over Classen's use of the property or that it required Classen to seek or obtain its approval before making improvements on the property. Therefore, the trial court correctly granted the summary judgment.

Affirmed.