Argued and submitted July 29, 1991, reversed and remanded February 12, reconsideration denied May 6, petition for review allowed July 21, 1992
(313 Or 627)

Duk Ki PARK,
Guardian Ad Litem for Rosa Park, a Minor,
*Appellant,*

*v.*

Julie HOFFARD,
Patricia A. Graves, Shirley D. Costello,
Gerald G. Andrews and Leon Hoffard,
*Defendants,*

*and*

Charlene K. HOFFARD,
nka Charlene K. Thomas,
*Respondent.*

Charlene K. THOMAS,
*Third-Party Plaintiff,*

*v.*

Duk Ki PARK
and Agnes S. Park,
*Third-Party Defendants.*

(A8910-06223; CA A66742)

826 P2d 79

Craig A. Nichols, Portland, argued the cause for appellant. With him on the briefs was David R. Kracke, Portland.

J. P. Harris, II, Salem, argued the cause for respondent. On the brief was James A. Wickwire, Salem.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

RIGGS, J.

## RIGGS, J.

Plaintiff, guardian *ad litem* for his minor daughter, Rosa, brought this action to recover damages for Rosa's personal injuries that resulted when defendant's tenant's dog attacked her.[1] The trial court granted summary judgment for defendant. We reverse and remand.

On review of a summary judgment, we must determine whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. ORCP 47C; *Seeborg v. General Motors Corp.*, 284 Or 695, 699, 588 P2d 1100 (1978). We view the record in the light most favorable to the party opposing the motion. *Seeborg v. General Motors Corp.*, *supra*.

At the time of the attack, plaintiff and his wife operated a grocery store adjacent to defendant's residential property. Defendant had been renting the property to her daughter, Hoffard, for approximately 10 years. Hoffard paid rent on a month-to-month basis. There was no written rental agreement. On several occasions, when Hoffard had acquired too many pets, defendant instructed her to remove some of them from the property.

Hoffard acquired a large black labrador retriever about one year after she began renting from defendant. Although the dog was usually kept penned up, it was occasionally allowed to roam the surrounding premises. Defendant's property was surrounded by a three-foot fence that the dog was able to jump. In 1987, the dog was quarantined after several complaints that it had attacked people, and shortly thereafter Multnomah County posted a dangerous dog sign on defendant's property. Other attacks occurred in 1988 and 1989. Sometime before July 4, 1989, defendant was aware that Hoffard's dog had bitten a child. On July 4, 1989, while Rosa was playing in the parking lot behind her parent's store, the dog attacked and bit her on the face, causing serious injuries.[2]

---

[1] Plaintiff sued both the landlord and the tenant. Pursuant to ORCP 67B, the trial court ordered final judgment to be entered as to the claims against the landlord, Thomas. Because only the judgment for Thomas is on appeal, we refer to Thomas as defendant.

[2] The dog was euthanized after it attacked Rosa.

The trial court concluded that defendant was entitled to judgment as a matter of law, because a landlord owes no duty to persons off the leased premises who are bitten by a tenant's dangerous animal. It also concluded that defendant was not liable for common law negligence, because any foreseeable risk of injury was created by the negligent tenant, not by defendant.

The specific issue in this case, whether a landlord may be held liable to third persons off the leased premises for injuries caused by a tenant's dangerous dog, is a question of first impression in this state. In other jurisdictions, the general rule is that, after a transfer of possession and control of leased property to the tenant, the landlord is not responsible for injuries to persons on or off the premises caused by the tenant's dog. *See, generally, Annot.*, 81 ALR3d 638 (1977). However, some jurisdictions have found exceptions to the general rule[3] and have imposed liability when

(1)   the landlord has actual knowledge of the dog's vicious propensities before leasing the premises and nevertheless leases the premises to the dog's owner;[4] or

(2)   the landlord gains actual knowledge of the dog's vicious propensities during the term of the leasehold and has retained some right to control the premises or the harboring of the dog.[5]

The general rule of nonliability is related to another general rule that a landlord is not responsible for injuries to third persons caused by conditions on the land that develop or are created after the property has been leased. *See Catale v. Vanport Mfg., Inc.*, 86 Or App 128, 131, 738 P2d 599 (1987); *see also Nagel v. Landels*, 271 Or 122, 130, 530 P2d 1239 (1975); *Fleischner v. Investment Co.*, 25 Or 119, 126, 35 P 174 (1893); *Restatement (Second) Torts* § 355, § 377, § 379A (1965). That rule is based on this rationale:

---

[3] *But see Clemmons v. Fidler*, 58 Wash App 32, 791 P2d 257, *rev den* 115 Wash 2d 1019 (1990); *Fernandez v. Marks*, 3 Haw App 127, 642 P2d 542 (1982).

[4] *E.g., Vigil by and through Vigil v. Payne*, 725 P2d 1155 (Colo App 1986); *Strunk v. Zoltanski*, 62 NY2d 572, 468 NE2d 13 (1984).

[5] *E.g., Uccello v. Laudenslayer*, 44 Cal App 3d 504, 118 Cal Rptr 741 (1975); *McCullough v. Bozarth*, 232 Neb 714, 442 NW2d 201 (1989); *Cronin v. Chrosniak*, 145 App Div 2d 905, 536 NYS2d 287 (1988).

"When land is leased to a tenant, the law of property regards the lease as equivalent to a sale of the premises for the term. The lessee acquires an estate in the land, and becomes for the time being both owner and occupier, subject to all of the responsibilities of one in possession, to those who enter upon the land and those outside of its boundaries.

"In the absence of agreement to the contrary, the lessor surrenders both possession and control of the land to the lessee, retaining only a reversionary interest; and he has no right even to enter without the permission of the lessee. Consequently, the traditional common law rule has been that [the landlord] is under no obligation to anyone to look after the premises or to keep them in repair, and is not responsible, either to persons injured on or off the land[,] for conditions which develop or are created by the tenant after possession has been transferred. Neither is [the landlord] held responsible, in general, for activities which the tenant carries on upon the land after such transfer, even when they create a nuisance." Prosser and Keeton, *Torts* 434, § 63 (5th ed 1984). (Footnotes omitted.)

In Oregon, that rationale is considered an unsatisfactory basis for immunizing a landlord from liability for failure to remedy a dangerous condition on leased property. *Bellikka v. Green*, 306 Or 630, 646, 762 P2d 997 (1988); *Jensen v. Meyers*, 250 Or 360, 363, 441 P2d 604 (1968). In *Jensen*, the court said:

"[I]t is no part of the general law of negligence to exonerate a defendant simply because the condition attributable to his negligence has passed beyond his control before it causes injury (if the injury was foreseeable at the time defendant still had control)." 250 Or at 363.

Instead, the court concluded that

"the immunity of the lessor may be rested upon grounds other than the mere transfer of a property interest to the lessee. * * * The exceptions engrafted upon the lessor's immunity from liability appear to be based principally upon the ground that the hazard created by the lessor is not likely to be remedied or immunized by the lessee and thus the lessor is made liable upon the well accepted principle that one is liable for reasonably foreseeable harms." 250 Or at 363.

In *Bellikka v. Green, supra,* the court extensively discussed the "[r]ifts in the Restatement's edifice" of traditional landlord and landowner immunity from liability to

third persons injured by dangerous conditions on the property. 306 Or at 644-47. *See also Fuhrer v. Gearhart By The Sea, Inc.*, 306 Or 434, 760 P2d 874 (1988).[6] It then examined the test articulated in *Jensen v. Meyers, supra,* 250 Or at 364 ("[T]he nature of the defect might be such that the landlord would reasonably expect that the tenant would take steps to remedy the defect or otherwise to safeguard persons"), and held it to be a sound premise for determining a landlord's liability to others on the leased premises. 306 Or at 647. Although *Bellikka* did not involve precisely the issue here, it is nevertheless significant, because the traditional rationale for immunizing a landlord from liability for injuries caused by conditions on the premises, which the court rejected, is the same as the usual rationale for immunizing a landlord from liability for injuries caused by a tenant's dog. In the light of *Bellikka*, we conclude that the rationale is an unsatisfactory basis for immunizing a landlord from liability for failure to protect third persons from a tenant's dog. Furthermore, we think that the *Jensen* test provides a sound premise for determining liability to others for injuries caused by a tenant's dangerous dog.

■      However, we note that virtually every court considering this issue has required that the landlord have actual knowledge of the dog's dangerous propensities and right to control the tenant's possession of a dog. *See McCullough v. Bozarth*, 232 Neb 714, 442 NW2d 201 (1989)(collecting cases). A California court has said:

"It should be emphasized that a duty of care may not be imposed on a landlord without proof that he knew of the dog and its dangerous propensities. Because the harboring of pets is such an important part of our way of life and because the exclusive possession of rented premises normally is vested in the tenant, we believe that *actual* knowledge and not mere constructive knowledge is required. For this reason we hold that a landlord is under no duty to inspect the premises for the purpose of discovering the existence of a

---

[6] In *Fuhrer*, the court noted that support for the traditional rule was no longer universal and extended the traditional innkeeper and landowner duty to protect or warn its guests about dangers on the premises to include reasonably foreseeable dangers off the premises. 306 Or at 441. Though that holding is not directly relevant to the issues in this case, the court's treatment of the traditional rules demonstrates that it does not consider them sufficient to protect a landowner from liability for reasonably foreseeable risks of harm, if the landowner acts unreasonably.

tenant's dangerous animal; only when the landlord has actual knowledge of the animal, coupled with the right to have it removed from the premises, does a duty of care arise." *Uccello v. Laudenslayer, supra* n 5, 44 Cal App 3d at 514. (Footnote omitted; emphasis in original.)

We agree with that reasoning and conclude that a landlord must have actual knowledge of the dog's dangerous propensities and some right to control the harboring of the dog before liability can arise.

■    There was evidence that defendant actually knew that the dog had dangerous propensities and that it sometimes roamed surrounding premises. There also was evidence that defendant had previously exercised control over Hoffard's other pets, at least to the extent of requiring their removal. The evidence presents a question of fact for the jury about the reasonableness of defendant's failure to act in the light of repeated escapes and attacks by the dog and defendant's exercise of control over Hoffard's other animals. A trier of fact could find that defendant knew of the dog's dangerous propensities, had sufficient control over the harboring of the dog and would not reasonably have expected Hoffard to take necessary precautions voluntarily and, therefore, that defendant's failure to act was unreasonable.

Reversed and remanded.