Argued and submitted August 31, 1992, decision of Court of Appeals affirmed as modified; judgment of circuit court reversed, and case remanded to circuit court for further proceedings March 25, 1993

Duk Ki PARK,
Guardian Ad Litem for
Rosa Park, a Minor,
*Respondent on Review,*

*v.*

Julie HOFFARD,
Patricia A. Graves, Shirley D. Costello,
Gerald G. Andrews, Leon Hoffard,
*Defendants,*

*and*

Charlene K. HOFFARD,
nka Charlene K. Thomas,
*Petitioner on Review.*

Charlene K. THOMAS,
*Third-Party Plaintiff,*

*v.*

Duk Ki PARK
and Agnes S. Park,
*Third-Party Defendants.*

(CC A8910-06223; CA A66742; SC S39173)

847 P2d 852

Margaret H. Leek Leiberan, Portland, argued the cause for petitioner on review. With her on the petition was J.P. Harris, II, P.C., Salem.

Craig A. Nichols, Portland, argued the cause for respondent on review.

UNIS, J.

## UNIS, J.

This case presents the question whether a landlord can be liable for injuries to a third party from an attack off the rental property by the tenant's dog.

Defendant (landlord) rented a house to her daughter (Hoffard). Hoffard's dog attacked plaintiff's minor daughter (Rosa) when she was playing in a parking lot adjacent to landlord's rental property. Plaintiff, as guardian *ad litem* for Rosa, brought an action against landlord for damages that resulted from the attack by Hoffard's dog. The trial court granted summary judgment for landlord.[1] The Court of Appeals reversed and remanded. *Park v. Hoffard*, 111 Or App 340, 826 P2d 79 (1992). We allowed review to decide whether a landlord can be held liable for damages from an attack off the rental property by a tenant's dog, where the plaintiff claims that the attack resulted from the landlord's failure to evict the tenant or take measures to control the dog. We affirm the decision of the Court of Appeals as modified by this opinion. We reverse the judgment of the circuit court, and we remand this case to the circuit court for further proceedings.

On review of a summary judgment, we determine whether the moving party is entitled to judgment as a matter of law. The moving party must show that there is no genuine issue of material fact. ORCP 47C; *Tolbert v. First National Bank*, 312 Or 485, 494, 823 P2d 965 (1991) (citing *Seeborg v. General Motors Corporation*, 284 Or 695, 699, 588 P2d 1100 (1978)). In reviewing a trial court's ruling on a motion for summary judgment, we view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the party opposing the motion. *Tolbert v. First National Bank, supra*, 312 Or at 494 (citing *Welch v. Bancorp Management Services*, 296 Or 208, 218, 675 P2d 172 (1983)).

At the time of the attack, plaintiff and his wife operated a grocery store adjacent to landlord's rental property in Portland. For about 10 years, landlord had been

---

[1] Plaintiff also sued tenant (Julie Hoffard). Pursuant to ORCP 67B, the trial court ordered final judgment to be entered as to the claims against landlord (Charlene K. Hoffard, nka Charlene K. Thomas). Only the judgment for landlord is on review in this case.

renting the property to Hoffard on a month-to-month tenancy without a written rental agreement. Landlord resided in Newport.

About one year after she began renting from landlord, Hoffard acquired a labrador retriever. Landlord's property, except for the driveway, was surrounded by a three-foot fence. The dog usually was kept penned up, but occasionally was free to roam, and there was evidence that the dog could jump over the fence. In 1987, after the dog bit a child, Multnomah County quarantined the dog and then returned it and posted a "potentially dangerous dog" sign on landlord's property. At least two other attacks occurred during 1988 and 1989, and landlord was aware that Hoffard's dog had bitten another child before the dog bit Rosa. Landlord was also aware that the "potentially dangerous dog" sign had been posted before the dog bit Rosa. On July 4, 1989, while Rosa was playing in the parking lot behind her parents' store, the dog bit her.

The trial court concluded that landlord was entitled to summary judgment, because a landlord owes no duty to third persons who are bitten off the rental property by a tenant's animal, even if the landlord knows that the animal is dangerous. The trial court also concluded that landlord was not negligent, because any foreseeable risk of injury in this case was created by the negligent tenant, not by landlord. The Court of Appeals disagreed. In reversing the summary judgment, the Court of Appeals held that a jury question was presented regarding landlord's liability where "[a] trier of fact could find that defendant knew of the dog's dangerous propensities, had sufficient control over the harboring of the dog and would not have expected [tenant] to take necessary precautions voluntarily and, therefore, that defendant's failure to act was unreasonable." *Park v. Hoffard, supra*, 111 Or App at 346.

In *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987),[2] this court set forth a general approach to analyzing liability in negligence cases:

---

[2] Together with *Kimbler v. Stillwell*, 303 Or 23, 734 P2d 1344 (1987), and *Donaca v. Curry County*, 303 Or 30, 734 P2d 1339 (1987), these cases have come to be known as the *Fazzolari* trilogy.

"In short, unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff. The role of the court is what it ordinarily is in cases involving the evaluation of particular situations under broad and imprecise standards: to determine whether upon the facts alleged or the evidence presented no reasonable factfinder could decide one or more elements of liability for one or the other party."

Thus, we must first determine whether there is a "status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty."

This court has looked to definitions of standards of conduct in the American Law Institute's Restatements of the Law to help define duty,[3] while at the same time recognizing the need to temper the Restatement rules where they are based on outmoded understandings of legal relationships. For example, in *Bellikka v. Green*, 306 Or 630, 643, 762 P2d 997 (1988), this court looked to *comment a* to the Restatement (Second) of Torts § 356 in its discussion of landlord liability, but recognized that "[t]wenty years ago this court acknowledged that the Restatement's reliance on leased property as conveyed property was unsatisfactory," *id.* at 646 (referring to *Jensen v. Meyers*, 250 Or 360, 441 P2d 604 (1968)). This court applied the test in *Jensen v. Meyers, supra,* that the landlord would not be liable if " 'the landlord would reasonably expect that the tenant would take steps to remedy the defect or otherwise to safeguard persons entering [the premises] at his invitation,' " *Bellikka v. Green, supra,* 306 Or at 647 (quoting *Jensen v. Meyers, supra,* 250 Or at 364 and n 5) as a "sound premise for determining liability to 'others on the property' of leased premises." *Bellikka v. Green, supra,* 306 Or at 647.

▪ This court has not had occasion to address the precise question presented in this case, *viz.,* whether a landlord can

---

[3] The Restatements provide guidance, but are not necessarily authoritative. *Anderson v. Fisher Broadcasting Co.,* 300 Or 452, 460, 712 P2d 803 (1986); *Brewer v. Erwin,* 287 Or 435, 455 n 12, 600 P2d 398 (1979).

be held liable for injuries to a third party from an attack by a tenant's dog off the rental property. With respect to activities after the landlord transfers possession, Restatement (Second) of Torts § 379A (1965) provides:

> "A lessor of land is subject to liability for physical harm to persons outside of the land caused by activities of the lessee or others on the land after the lessor transfers possession if, but only if,
>
> "(a)   the lessor at the time of the lease consented to such activity or knew that it would be carried on, and
>
> "(b)   the lessor knew or had reason to know that it would unavoidably involve such an unreasonable risk, or that special precautions necessary to safety would not be taken."

*Comment a* to Section 379A provides:

> "The rule stated in this Section is closely related to that stated in § 837 as to the liability of the lessor for a nuisance on the land, and should be read together with that Section. The Comments to § 837 are applicable so far as they are pertinent."

Restatement (Second) of Torts § 837(1)(a) (1979) is similar to Restatement (Second) of Torts § 379A(a) (1965).[4] Restatement (Second) of Torts § 837(1)(a) provides liability for a nuisance caused by an activity on the leased premises if, among other conditions, "at the time of the lease the lessor consents to the activity or knows or has reason to know that it will be carried on." *Comment g* to Restatement (Second) of Torts § 837(1)(a) provides:

> "*Lease renewed.*   If at the time that the lessor renews the lease he knows that activities are being carried on or that

---

[4] At the time Restatement (Second) of Torts § 379A (1965) was published, Restatement (Second) of Torts § 837 (1979) was not yet published. Restatement of Torts § 837 (1939) provided:

"A lessor of land is liable for an invasion of another's interest in the use and enjoyment of other land, occurring while the lessor continues as owner of the land, which is caused by an activity carried on upon the leased land while the lease continues, if the lessor would be liable under the rule stated in § 822 had the activity been carried on by him, and if

"(a) at the time when the lease was made, renewed or amended, the lessor consented to the carrying on of the activity, or knew that it would be carried on, and

"(b) the activity, as the lessor should have known, necessarily involved or was already causing such an invasion."

physical conditions have been created upon the leased land that are causing an unreasonable interference with the use and enjoyment of another's land, he is liable for the continuance of the interference after the renewal."[5]

Because *comment g* is pertinent to Section 379A, it is applicable in interpreting that section. Thus, under Section 379A, the landlord can be liable for physical harm to persons off the rental property caused by activities of the lessee or others on the rental property only if, at the time of the original lease or lease renewal,[6] the landlord consented to the activity or knew that it would be carried on. This is essentially the conclusion that the Court of Appeals reached without discussing the Restatement. *Park v. Hoffard, supra*, 111 Or App at 346 ("a landlord must have actual knowledge of the dog's dangerous propensities and some right to control the harboring of the dog before liability can arise").

This action arose because of the special relationship between a landlord and a tenant. That relationship has implications for a landlord's tort liability to persons injured off the rental property by some action or inaction of the tenant to the extent that a landlord has control over the tenant. The landlord's ability to control the activities of the tenant most commonly results from the landlord's ability to decide

---

[5] This comment is nearly identical to *comment f* to Restatement of Torts § 837(a). *See supra*, note 4.

[6] Restatement (Second) of Property § 18.4 (1977) states a rule nearly identical to Restatement (Second) of Torts § 379A. Just as *comment a* to § 379A incorporates *comment g* to Restatement (Second) of Torts § 837, so *comment a* to Restatement (Second) of Property § 18.4 incorporates comments pertinent to Restatement (Second) of Torts § 837, including *comment g*, relating to lease renewal. *See supra*, notes 4 and 5. In addition, *comment g* to Restatement (Second) of Property § 18.4 specifically refers by analogy to *comment i* of Restatement (Second) of Property § 17.1, which provides in part:

"The rule of this section is applicable where the landlord renews a lease, or allows a periodic tenancy to continue into the next period, when at the time of the renewal or at the beginning of the next period the leased property is in a condition which, if such condition existed at the time of the original leasing, would subject the landlord to liability under the rule of this section. It is of no consequence that the landlord does not physically take possession of the property between the terms and make a new delivery of possession to the tenant. A renewal of a lease or a continuation of a periodic tenancy into a new period is treated the same as a complete termination of the lease, followed by resumption of possession by the landlord and then transfer of possession from the landlord to the tenant, not only for the purposes of the rule of this section, but also for the purposes of § * * * 18.4."

whether to rent or lease a property to a tenant in the first place, whether to renew a lease or a periodic tenancy, or whether to terminate a tenancy at will or other tenancy that the landlord is able to terminate unilaterally. We conclude that, with respect to a tenant's activity of harboring a dog, Restatement (Second) of Torts § 379A, quoted *supra*, states an appropriate rule with respect to a landlord's liability for physical harm to persons off the rental property caused by a tenant's dog. That is, a landlord can be liable for such harm only if (1) the landlord, at the time of entering into a lease, at the time of renewing a lease or a periodic tenancy, or at any time during a tenancy at will or other tenancy that the landlord is able to terminate unilaterally, consents to such activity or knows that it will be carried on, and (2) the landlord knows or has reason to know that the activity will unavoidably involve an unreasonable risk of harm to persons off the rental property.

In response to landlord's motion for summary judgment, plaintiff cited portions of landlord's deposition showing that the tenancy was a periodic month-to-month tenancy, that landlord was aware of the sign that was posted on the rental property that warned of a dangerous dog, and that landlord was aware that the sign was posted because tenant's dog had bitten a boy before the incident involving plaintiff. Viewing the evidence in the light most favorable to plaintiff, a jury could find that landlord consented to or knew of tenant's dangerous activity and that landlord knew or had reason to know that the activity would unavoidably involve an unreasonable risk of harm to persons off the rental property. Summary judgment for defendant was not warranted.[7]

The decision of the Court of Appeals is affirmed as modified. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

[7] In order to establish liability, plaintiff must establish all of the elements of negligence. Establishing a special relationship between landlord and tenant and affecting third persons helps establish duty. Plaintiff must also establish that defendant breached the duty in a way that caused defendant harm. *See Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 14-15, 734 P2d 1326 (1987) (discussing elements of negligence action in context of special relationship between the plaintiff and the defendant); *see also Bellikka v. Green*, 306 Or 630, 648, 762 P2d 997 (1988) (analyzing common law negligence after discussing special landlord/tenant relationship in Restatement).