(281 P.3d 1186)
No. 106,177

CYNDI CARR, *Appellant*, v. RODNEY VANNOSTER,
MARY VANNOSTER, his wife, and JIM VANNOSTER, *Appellees*.

Opinion
filed August 3, 2012.

*Sarah A. Mills*, of The Spigarelli Law Firm, of Pittsburg, for appellant.

*Norman R. Kelly*, of Norton, Wasserman, Jones & Kelly L.L.C., of Salina, for appellee Jim Vannoster.

Before GREEN, P.J., MALONE and MCANANY, JJ.

·MCANANY, J.: On May 20, 2009, Cyndi Carr was injured when she was bitten on the ankle by a pit bull owned by Rodney Vannoster while she was on the premises occupied by Rodney. She sued Rodney and Rodney's wife, Mary Vannoster.

In her amended petition Carr also asserted negligence claims against Rodney's father, Jim Vannoster, claiming that Jim, who owned the property where Rodney and Mary lived and kept the dog, was negligent in: (1) failing to act on his knowledge that Rodney's dog was dangerous; (2) failing to direct Rodney to properly restrain the dog; (3) failing to direct Rodney to properly pen the dog; (4) failing to direct Rodney to post a warning sign announcing the presence of the dog; and (5) failing to exercise his rights as owner of the premises to expel Rodney or the dog or both of them from the property. Carr did not make a specific claim against Jim for strict liability as the possessor or harborer of a dangerous animal, though she later asserted that as a basis for denying the summary judgment Jim later requested.

Carr moved for summary judgment against Rodney and Mary and was awarded a judgment against them in the amount of $325,000.

The issues now before us came to a head when Jim moved for summary judgment on Carr's claims against him. While Jim asked that the case be dismissed for failure to state an actionable claim, he couched his request in the form of a summary judgment motion because he asked the court to consider facts beyond the face of Carr's pleading. The court granted Jim summary judgment on Carr's claim against him, finding that Carr failed to state an actionable claim against Jim. It is the propriety of this ruling that Carr asks us to review.

## REVIEW STANDARDS

The district court based its summary judgment ruling upon Carr's failure to state an actionable claim as it would in the case of a motion to dismiss. But this does not affect our review. The motion was one for summary judgment. Jim relied on facts beyond the face of Carr's pleading and enumerated them in his statement of

claimed uncontroverted facts. Accordingly, we review Jim's motion for what it was: a motion for summary judgment.

The standards courts apply in summary judgment proceedings are well established. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any supporting affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. K.S.A. 2011 Supp. 60-256(c)(2). In opposing a defendant's summary judgment motion, the plaintiff may not rely merely on allegations in the petition. To the contrary, the plaintiff must establish by affidavits or facts in the record that there exists a genuine issue of material fact for trial. See K.S.A. 2011 Supp. 60-256(e)(2).

The court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom summary judgment is sought. In order to preclude summary judgment, the facts subject to the dispute must be material.

" 'An issue of fact is not genuine unless it has legal controlling force as to the controlling issue. The disputed question of fact which is immaterial to the issue does not preclude summary judgment. If the disputed fact, however resolved, could not affect the judgment, it does not present a genuine issue of material fact. [Citation omitted.]' " *Mitchell v. City of Wichita*, 270 Kan. 56, 59, 12 P.3d 402 (2000).

Summary judgment is not appropriate if reasonable minds can differ as to the conclusions drawn from the evidence. *Osterhaus v. Toth*, 291 Kan. 759, 768, 249 P.3d 888 (2011); see Supreme Court Rule 141 (2011 Kan. Ct. R. Annot. 232). On appeal, we apply these same rules de novo. *Kuxhausen v. Tillman Partners*, 291 Kan. 314, 318, 241 P.3d 75 (2010).

The central issue in this case is whether Jim owed a duty of due care to Carr. Carr had the burden of proving that Jim owed her this duty. While the breach of a duty is an issue of fact, whether a duty exists is an issue of law for the court. See *Schmidt v. HTG, Inc.*, 265 Kan. 372, 396-97, 961 P.2d 677, *cert. denied* 525 U.S. 964 (1998). Carr also raises the issue of strict liability for Jim possessing or harboring a dangerous animal.

## UNCONTROVERTED FACTS

The following facts set forth in the memorandum supporting Jim's motion are uncontroverted. In her response to Jim's motion, Carr set forth additional claimed uncontroverted facts. Because we have in the record no response from Jim regarding these additional facts, we accept them as also being uncontroverted. They are as follows:

Jim lived in a house located on 80 acres he acquired over 20 years before this May 20, 2009, incident. Jim was retired. His address was 2612 County Road 3500, Independence, Kansas.

Jim's son, Rodney, suffered a spinal cord injury in a stock car race in approximately 2000. As a result, Rodney was disabled and confined to a wheelchair.

For about 5 years before this incident, Rodney lived in a home with 4 acres owned by Jim. Jim purchased the property in about 2000 as a home for Rodney. The address of the property was 3337 County Road 2800, Independence, Kansas. This is approximately 1 mile from Jim's residence. Jim built a wheelchair ramp for Rodney and paid the liability insurance premium on this property as well as the property taxes. Jim described the arrangement as "more or less kind of a rental." There was no written lease agreement between Jim and Rodney. Rodney said in his deposition the rent was $350 per month. Jim said in his deposition the rent was $300 per month. Rodney had not paid Jim any rent for over 1 year before the May 20, 2009, incident.

Rodney repaired lawnmowers as a hobby in the garage located at his residence. However, some people paid Rodney for his repair work. Rodney had people stopping by his shop from time to time. Jim visited Rodney once or twice a week and sometimes helped Rodney with his lawnmower activities.

Rodney acquired the pit bull 3 years before this incident. The dog was never at Jim's residence during the time Rodney owned her. Jim never owned, possessed, kept, or cared for the dog. (He claimed that he never "harbored" the dog, but Carr disputed this.) Jim never transported the dog in one of his vehicles and never took the dog away from the house and 4 acres that Rodney occupied.

Whenever Jim visited Rodney, the dog was running loose without any enclosure.

Rodney's pit bull was approximately 3 years old at the time of this incident and had recently had a litter of pups. Sometime before the current incident the dog had nipped a neighbor on the back of his pant leg. Jim knew that the dog had "extremely dangerous propensities" because pit bulls were banned in the City of Independence. (The properties in question were located outside the city.)

On May 20, 2009, Rodney's dog attacked and injured Carr in Rodney's driveway approximately 50 feet from the garage where Rodney was working on lawnmowers.

## ANALYSIS

### Liability for Negligence as a Landlord

#### Whether Jim was a Landlord

Jim relied on *Colombel v. Milan*, 24 Kan. App. 2d 728, 952 P.2d 941 (1998), as support for his summary judgment motion. In *Colombel*, this court was called upon to decide whether "a landlord may be held liable under Kansas law for the injuries a third party suffers due to the actions of his or her tenants' vicious dog on the leased property." 24 Kan. App. 2d at 729-30. The court in *Colombel* dealt with the issue at the pleading stage (the defendant had moved to dismiss for failure to state a claim), rather than in a summary judgment motion following discovery.

The *Colombel* court discussed *Borders v. Roseberry*, 216 Kan. 486, 532 P.2d 1366 (1975), in which our Supreme Court considered a landlord's liability to a tenant's guest who fell on ice that had accumulated on the leased property. The *Borders* court held that a landlord not in possession of the premises owed no duty of due care to third parties, subject to certain exceptions which we will discuss later. The *Colombel* court determined that the *Borders* exception relied upon by the plaintiff did not apply and affirmed the district court's dismissal for failure to state an actionable claim. 216 Kan. at 494.

In her response to Jim's motion, Carr contended that Jim was liable either on a negligence theory based on his status as a landlord, on a general negligence theory, or on a strict liability theory

based upon Jim having harbored a dangerous animal. With respect to Carr's first negligence theory, Carr claimed there was a genuine issue of material fact as to whether Jim actually was Rodney's landlord. Her first position was that Jim was not Rodney's landlord and so the general rule of no liability for landlords in *Borders* did not apply.

In considering Jim's motion, we are required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of Carr, the party against whom summary judgment was sought. See *Osterhaus*, 291 Kan. at 768. Jim claims he was Rodney's landlord and the no-liability rule of *Borders* applies. In resisting Jim's motion Carr claims that summary judgment cannot be awarded based on the *Borders* no-liability-for-landlords rule because there is a genuine issue as to whether Jim was a landlord.

Jim's assertion that he was a landlord protected by the principle in *Borders* makes the facts surrounding the landlord/tenant issue material. Therefore, in determining whether there remains an issue for trial, we are required on this issue to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of there being no landlord/tenant relationship, the position Carr, the nonmoving party, asserts on this issue.

We need not recount all the uncontroverted facts outlined above on this point. It is clear that Jim and Rodney did not have a typical landlord/tenant relationship. Jim referred to the property that Rodney lived on as "more or less kind of a rental property." There was no written lease or rental agreement. Jim and Rodney claim they had an oral agreement to pay monthly rent, but they disagreed on the amount of the monthly rent. The tenant's obligation for periodic rent is a typical element of most landlord/tenant relationships. See K.S.A. 58-2545(b). Rodney failed to pay any rent whatsoever for a protracted period before this incident. Jim took no action to require Rodney to pay rent during this period.

It would seem that viewing the evidence in the light more favoring Carr's position on this point it is possible that a jury could determine that there was no landlord/tenant relationship. The contested issue of Jim's status vis-a-vis Rodney remains. But the real question is, regardless which way a jury might resolve this issue,

would Jim ultimately prevail at trial based on the current state of the law? To answer this question we need to turn to the issue of the *Borders* exceptions to the rule of no liability for landlords.

### The Borders *Exceptions to the No-Liability Rule*

The court in *Borders* enumerated six exceptions to the no-liability-for-landlords rule. Carr contends that there is evidence to support two of these exceptions and, therefore, there remains a genuine issue of material fact that must be resolved at trial before Jim's liability for Rodney's dog can be determined. The *Borders* exceptions are:

"(1) when there are dangerous conditions known to the lessor and unknown to the lessee;

"(2) when there are conditions dangerous to persons outside of the premises;

"(3) when the premises are leased for admission of the public;

"(4) when parts of the land are retained in the lessor's control which the lessee is entitled to use;

"(5) when the lessor contracts to repair the premises; and

"(6) when the lessor is negligent in making repairs." *Colombel*, 24 Kan. App. 2d at 730-31.

Carr relies on the following exceptions:

"(3) when the premises are leased for admission of the public;

"(4) when parts of the land are retained in the lessor's control which the lessee is entitled to use." *Colombel*, 24 Kan. App. 2d at 731.

Of course, a *Borders* exception can apply only if there is a landlord/tenant relationship. Jim claimed he was Rodney's landlord, but Carr denied this claim and contended there is a genuine issue of material fact regarding Jim's status.

We have determined that Jim's status as a landlord remains an issue for trial. The sub-issue of the *Borders* exceptions comes into play only if Jim is found to be a landlord. If Carr prevails on her original contention that Jim was not a landlord, then she must premise her liability claim against Jim on some other theory, because *Borders* and its exceptions only apply to landlords.

To successfully preserve for trial the claim that *Borders* exceptions (3) and (4) apply, Carr is in the interesting position of having to infer from the evidence that a landlord/tenant relationship ex-

isted, the exact opposite of her earlier position. To determine whether there is a genuine issue of material fact as to whether *Borders* exceptions (3) and (4) apply, we now have to view the evidence from the perspective favoring the existence of a landlord/ tenant relationship, the position advanced by Carr, the nonmoving party, on this point.

Under *Borders* the general rule of no liability for landlords does not apply:

"(3) when the premises are leased for admission of the public;

"(4) when parts of the land are retained in the lessor's control which the lessee is entitled to use." *Colombel*, 24 Kan. App. 2d at 731.

### Borders *Exception (3)*

With respect to exception (3), we must determine whether, viewing the evidence in the light more favoring Carr, there remains a triable issue as to whether the premises were leased to Rodney for admission of the public. While Rodney characterized his work on lawnmowers as a hobby, he also testified that he received payment for his work on occasion and had visitors at his garage in connection with that activity.

But the *Borders* exception requires that renting the premises was, at least to some extent, for the purpose of admitting the public to the premises. While we give the nonmovant Carr the break on inferences that can be derived from the evidence, we cannot create an inference out of thin air. Here, the uncontroverted facts do not suggest that Jim acquired the property, fixed it up, and turned it over to Rodney for the purpose or with the expectation that Rodney would use part of the property to operate a repair business that would entertain business invitees. We have no facts as to when Rodney started his lawnmower repair activities. It may have been years after Jim entered into his rental arrangement with Rodney. We have no evidence from which we can infer that running a lawnmower repair business was part of the original plan when Jim turned the premises over to Rodney. Carr has come forward with no evidence from which a jury could reasonably conclude that Jim rented the premises to Rodney so that Rodney could engage in an

activity that would involve admitting the public to the premises. We find no triable issue with respect to *Borders* exception (3).

### Borders *Exception (4)*

*Borders* exception (4) applies "when parts of the land are retained in the lessor's control which the lessee is entitled to use." *Colombel*, 24 Kan. App. 2d at 731. In her brief in opposition to Jim's motion for summary judgment, Carr argues that this exception applies because

"the loose-running Pit Bull bit Plaintiff in Defendant Jim's driveway, which was the entrance to Defendant Jim's land where Defendant Jim had retained control over the lessee, Defendant Rodney, and Defendant Jim had failed to exercise reasonable care to make the driveway safe.

. . . .

"Exception (4) is the second exception that Defendant Jim has satisfied, because he was in control of the driveway which was the common entrance to the house provided to Defendant Rodney."

We also find no facts from which one could reasonably infer that Jim, as the landlord, leased the house to his son but retained a possessory interest in the driveway. The fact that Jim frequently visited his son and, we presume, used the driveway in doing so, does not raise the inference that he retained a possessory interest in the driveway. Carr asserts that the driveway was the entrance to Jim's land. But this was land that Jim rented to Rodney. Jim's separate residence was about a mile away from Rodney's rented house. Carr cites nothing in the record that suggests that the driveway served any property other than Rodney's rented house and garage.

In her brief in opposition to Jim's motion for summary judgment, Carr argued further: "Because Defendant Rodney was living rent-free and his father, Defendant Jim, was allowing his son to live rent-free, Defendant Jim, as a landlord and father, had almost exclusive control over the premises where Plaintiff was attacked." We cannot make this inference of control based upon Rodney's failure to pay rent. The premise for Carr's contention that *Borders* exception (4) applies is that a valid landlord/tenant relationship existed. We must infer from the existence of such a relationship that Rodney had exclusive control of the rented premises, and Carr provides no evidence to the contrary.

We find no evidence to support the application of *Borders* exception (4). Carr, the nonmoving party, was required to come forward with some evidence on this point; she cannot rely on mere allegations. We find no facts from which one could reasonably infer that Jim exercised control over Rodney, or that the driveway where Carr was bitten served any property other than Rodney's rented house and garage.

*Other Theories of Liability*

*Expanded Landlord Liability for Negligence*

Carr contends, in essence, that the *Borders* exceptions to the rule of no landlord liability should be expanded consistent with holdings from other jurisdictions such as *Uccello v. Laudenslayer*, 44 Cal. App. 3d 504, 512, 118 Cal. Rptr. 741 (1975); *Park v. Hoffard*, 315 Or. 624, 632, 847 P.2d 852 (1993); and *Palermo v. Nails*, 334 Pa. Super. 544, 548-49, 483 A.2d 871 (1984). Carr admits that there is no case in Kansas that expands a landlord's liability to situations presented in those cases. As an intermediate appellate court we are not inclined to do so when the limited exceptions to the no-liability rule come from our Supreme Court. When one strays beyond those Supreme Court defined exceptions to the no-liability rule, *Colombel* reminds us: "Kansas follows the common law of injury-by-animal. Under the common law, no one but an owner, possessor, keeper, or harborer of an animal can be held liable for its actions." 24 Kan. App. 2d at 732.

*Strict Liability as a Possessor or Harborer*

Jim also relied upon the Restatement (Second) of Torts as support for his summary judgment motion. The court in *Colombel* considered the application of the strict liability principle found in the Restatement (Second) of Torts § 509(1) (1977), which provides:

" 'A *possessor* of a domestic animal that he knows or has reason to know has dangerous propensities abnormal to its class, is subject to liability for harm done by the animal to another, although he has exercised the utmost care to prevent it from doing the harm.' (Emphasis supplied.)" 24 Kan. App. 2d at 731.

Carr does not contend that Jim possessed the dog. There certainly is no evidence that he did. But liability is not limited solely to a possessor. The *Colombel* court noted that § 514 of the Restatement recognizes that one who harbors a vicious animal bears the same strict liability as one who possesses the animal. This is the alternative Carr asserted to her claim that Jim was liable as a landlord. She stated in her brief in opposition to Jim's motion: "If Defendant Jim is not held to be a landlord, he is strictly liable to Plaintiff as a 'harborer' of Defendant Rodney's dog because he permitted Defendant Rodney, his son, to keep the dog on his property." She argued that there remained a genuine issue of material fact as to whether Jim harbored the pit bull and, thus, was liable as if he were its possessor.

The court in *Colombel* found Comment a following Restatement § 514 to be helpful. The comment states:

"The rule stated in this Section imposes the same liability upon one who, although neither the owner nor the possessor of the animal, harbors it by making it part of his household. This he may do by permitting a member of his household, including those servants who are regarded as members, to keep the animal either in the house or on the premises that are occupied as the home of the family group of which he is the head. Thus a person harbors a dog or cat by permitting his wife, son or household servant to keep it in the house or on part of his land that is occupied by the family as a group. On the other hand, the possession of the land on which the animal is kept, even when coupled with permission given to a third person to keep it, is not enough to make the possessor of the land liable as a harborer of the animal. Thus a father, on whose land his son lives in a separate residence, does not harbor a dog kept by his son, although he has the power to prohibit the dog from being kept and fails to exercise the power or even if he presents the dog to his son to be so kept. The same is true when a master permits his servant to keep a dog in a house or part of the premises that is given over to the exclusive occupation of his servant. So, too, he does not become a harborer of a dog that he permits a friend to keep on his land unless he takes it into his home and thus makes it, as it were, a member of his household." Restatement (Second) of Torts § 514, Comment a.

The *Colombel* court concluded: "Kansas follows the common law of injury-by-animal. Under the common law, no one but an owner, possessor, keeper, or harborer of an animal can be held liable for its actions." 24 Kan. App. 2d at 732.

Restatement (Second) of Torts § 514, Comment a, presents a strikingly apropos scenario:

"Thus a father, on whose land his son lives in a separate residence, does not harbor a dog kept by his son, although he has the power to prohibit the dog from being kept and fails to exercise the power or even if he presents the dog to his son to be so kept."

This example fits the facts now before us.

As noted in *Nichols v. Kansas Political Action Committee*, 270 Kan. 37, 43, 11 P.3d 1134 (2000), the Restatement "is not a compilation of Kansas law." Nevertheless, as our court recently recognized in *Estate of Beldon v. Brown County*, 46 Kan. App. 2d 247, 271-72, 261 P.3d 943 (2011):

"The Kansas Supreme Court has regularly relied upon the Restatement (Second) of Torts for authoritative guidance in fashioning controlling doctrine on scope of duty, negligence, and related liability issues when a plaintiff alleges a special relationship. [*Adams v. Board of Sedgwick County Comm'rs*, 289 Kan. 577, 593-97, 214 P.3d 1173 (2009)]; [*Hesler v. Osawatomie State Hospital*, 266 Kan. 616, 624, 971 P.2d 1169 (1999)] (citing Restatement [Second] of Torts §§ 314A, 316, 319 and 320 [1964]); [*Jackson v. City of Kansas City*, 263 Kan. 143, 156-57, 947 P.2d 31 (1997)] (applying Restatement [Second] §320); *Boulanger v. Pol*, 258 Kan. 289, 303-08, 900 P.2d 823 (1995) (noting Restatement [Second] §§ 31520 and applying § 315). The court also frequently draws on the Restatement (Second) in other areas of tort law. See, *e.g., Valadez v. Emmis Communications*, 290 Kan. 472, 477, 229 P.3d 389 (2010); *Puckett v. Mt. Carmel Regional Med. Center*, 290 Kan. 406, 421, 228 P.3d 1048 (2010); *Thomas v. Benchmark Ins. Co.*, 285 Kan. 918, 930-33, 179 P.3d 421 (2008). The considered and continuing reliance the court affords the Restatement (Second) as a sound source for legal principles shaping common-law tort doctrine in Kansas lends considerable support to our conclusion here."

Jim was not a harborer of Rodney's dog as described in the Restatement. Rodney was not a member of Jim's household. Rodney maintained his own household on the premises where he lived with his wife. The home where he kept his dog was not the home or premises occupied "as the home of the family group of which [Jim was] the head." The two homes were about a mile apart. Carr does not provide us with any evidence in the record that Rodney was ever physically present in his father's house after he took up residence with his wife in the separate house where he kept the dog.

We find no facts from which, with the guidance of the Restatement, we can reasonably infer that Jim harbored the dog. The court in *Colombel* found the Restatement view of harboring to be persuasive. We do too. We conclude that summary judgment in favor of Jim is appropriate on Carr's claim of strict liability based on the theory that Jim is liable for possessing or harboring a dangerous dog.

## SUMMARY AND CONCLUSION

To briefly summarize our analysis, Jim was either a landlord or he was not. If Jim was a landlord, then the general rule of no liability for landlords announced in *Borders* applied to insulate him from liability for the injury caused by a dog owned by his tenant and kept on the leased property.

But Carr asserted that if Jim was a landlord, he was subject to two exceptions to the no-liability-for-landlords rule. Our analysis of the two *Borders* exceptions Carr relied on led us to conclude that neither applied. Thus, if Jim was a landlord, based on the analysis in *Colombel* and the uncontroverted facts before us, Jim was entitled to judgment as a matter of law on Carr's claim that he was liable for Carr's injuries caused by his tenant's dog.

Carr argued for the application of theories advanced in some other states for imposing liability on a landlord under certain special circumstances. Having determined that those cases do not reflect the law of Kansas on this subject, we concluded that if Jim was a landlord he had no liability to Carr for her injuries and he was entitled to judgment as a matter of law.

If Jim was not a landlord, he could be held liable for Carr's injuries if he was found to have either possessed or harbored the dog. But there was no claim that Jim possessed the dog; and applying the Restatement (Second) of Torts as Kansas courts regularly do in analyzing tort liability, we concluded that there was no genuine issue of material fact as to whether Jim harbored the dog and Jim was entitled to judgment as a matter of law on Carr's theory of strict liability.

The district court found that Jim was entitled to summary judgment, and in our de novo review we do too.

Affirmed.