Argued and submitted September 24, 1999, reversed in part; otherwise affirmed
June 21, 2000

# Maria Carolina EDUARDO,
### *Appellant,*

*v.*

# CLATSOP COMMUNITY RESOURCE DEVELOPMENT CORPORATION,
fka Clatsop Community Action, Inc.,
an Oregon nonprofit corporation,
*Respondent.*

(972150; CA A103699)

4 P3d 83

Daniel Hoarfrost argued the cause and filed the briefs for appellant.

Thomas M. Christ argued the cause for respondent. With him on the brief was Mitchell, Lang & Smith.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

DE MUNIZ, P. J.

.

**DE MUNIZ, P. J.**

In this personal injury action, plaintiff tenant seeks review of a judgment dismissing her claims against defendant landlord and denying her motion for summary judgment. We reverse.

Plaintiff's first amended complaint, which is the subject of this appeal, alleges the following facts. The parties entered into a month-to-month residential rental agreement in May 1995. Defendant owned the property that was the subject of that agreement. Both parties agreed to comply with all applicable codes and regulations. Building codes in effect when the building was constructed required continuous handrailings for staircases with more than three risers. Building codes in effect when the parties entered into the rental agreement also required continuous handrailings. In November 1995, plaintiff suffered a serious injury when she fell down the staircase connecting the main floor of her residence to the basement. The staircase was constructed of varnished wood with nonabrasive treads and, at the time of the fall, lacked continuous handrails.

Plaintiff further alleges that the condition of the stairwell violated applicable building codes, creating an unreasonably dangerous situation that defendant knew about or reasonably could have discovered. She identifies four claims for relief based on theories of statutory liability, negligence *per se* and negligence. Plaintiff's first two claims for relief are based on defendant's alleged violation of building codes in effect when the building was constructed. Plaintiff's third claim for relief alleges negligence *per se* based on defendant's failure, under the terms of the rental agreement, to comply with applicable building codes. Plaintiff's fourth and final claim alleges that defendant negligently subjected her to a foreseeable risk of harm and that defendant knew of, or reasonably could have discovered the dangerous condition of the staircase.

The trial court dismissed plaintiff's first amended complaint for failure to state a claim under ORCP 21A(8), finding that it added no material allegations to her original complaint, which had been dismissed previously. The court

also denied plaintiff's motion for summary judgment, finding that issue moot. Plaintiff assigns error to the court's judgment of dismissal of her first amended complaint and denial of her motion for summary judgment.

■   In reviewing plaintiff's claims for relief, we accept the allegations in plaintiff's complaint as true, together with all reasonable inferences. *McAlpine v. Multnomah County,* 131 Or App 136, 138, 883 P2d 869 (1994), *rev den* 320 Or 507 (1995). Even vague allegations as to each element of a claim for relief are sufficient to survive a motion to dismiss. *Id.*

Plaintiff's first claim for relief rests on a theory of statutory liability, arising from the alleged violation of building codes in effect at the time of construction.[1] Specifically, plaintiff alleges that the absence of a continuous handrail violated Astoria City Ordinance (ACO) No. 39-35 (1939), providing

"[t]hat all of the provisions of the Uniform Building Code of the Pacific Coast Building Officials' Conference of 1937 [(UBC)], be and the same are hereby adopted by reference and incorporated *in this ordinance in the same manner and with the same force and effect as if each and all of said provisions were herein fully set forth[.]"

The relevant UBC provision, section 3305, provides that

"[a]ll stairways shall have walls or well secured balustrades or guards on each side and handrails shall be placed on at least one side of every stairway and stairways exceeding forty four inches (44") in width shall have handrails placed on each side."

■   To support an action for statutory liability in this case, ACO No. 39-35 must first "impose [on landlords] a statutory duty to act on behalf of [a tenant]" who is at risk of being injured as a result of the landlord's failure to act.[2]

---

[1] Plaintiff titled her first claim for relief as one for "statutory liability." Defendant, on the other hand, refers to it as "statutory tort." In *Bellikka v. Green,* 306 Or 630, 635, 762 P2d 997 (1988), the Supreme Court said "[s]tatutory liability is not necessarily 'tort' liability, a characterization that might affect issues such as the measure of damages or the statute of limitations[.]" (Citations omitted.) However, neither party explains how the distinction applies in the context of this case, and we conclude that it makes no difference.

[2] Citing "home rule" principles, defendant suggests, in passing, that it is doubtful whether municipalities have the necessary authority to impose civil liability.

*Scovill v. City of Astoria*, 324 Or 159, 169-70, 921 P2d 1312 (1996) (violation of statute that requires peace officers to take intoxicated persons into custody may give rise to action in statutory tort). Second, the ordinance must "disclose that a failure to act as mandated was contemplated by the legislature to give rise to a potential liability in tort[.]" *Id.*

■     Our first inquiry, therefore, is whether ACO No. 39-35 imposes a duty on defendant as a landlord. Ordinances are construed using the familiar *PGE* analysis. *Harris v. Sanders*, 142 Or App 126, 130, 919 P2d 512, *rev den* 324 Or 322 (1996). We begin with the text as the best evidence of a legislative body's intent. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). We also look at context, including "other provisions of the same statute and related statutes, *id.* at 610-11, prior enactments and prior judicial interpretations of those and related statutes, *Owens v. Maass*, 323 Or 430, 435, 918 P2d 808 (1996), and the historical context of the relevant enactments." *Young v. State of Oregon*, 161 Or App 32, 35-36, 983 P2d 1044, *rev den* 329 Or 447 (1999).

■     ACO No. 39-35 requires, by reference to section 3305 of the UBC, that "handrails *shall* be placed on at least one side of every stairway[.]" (Emphasis added.) When used in a statute, "shall" normally imposes a nondiscretionary duty on the person or persons directed to act. *Scovill*, 324 Or at 167 n 7 (citing *Dika v. Dept. of Ins. and Finance*, 312 Or 106, 109, 817 P2d 287 (1991)). The same is true for ordinances. In any event, defendant does not dispute that ACO No. 39-35 imposes an affirmative duty to act. Rather, defendant argues that that duty does not apply to landlords. According to defendant, building codes regulate construction, not maintenance, and therefore apply to builders, not landlords.

---

Defendant's argument is not sufficiently developed for appellate review, and we therefore decline to address it. *State v. Montez*, 309 Or 564, 604, 789 P2d 1352 (1990). However, it is worth noting that, in *Sims v. Besaw's Café*, 165 Or App 180, 997 P2d 201 (2000), we held that a Portland City Ordinance providing a right of action in state court to persons discriminated against by their employers because of that person's sexual orientation was valid. *See also Harris v. Sanders*, 142 Or App 126, 919 P2d 512, *rev den* 324 Or 322 (1996) (imposing statutory liability on abutting landowners for failing to maintain a sidewalk in accordance with the city's ordinance).

Turning to other provisions of the UBC, we note that section 102 (1930) "regulate[s] the maintenance, use and occupancy of all buildings[.]"[3] Similarly, section 105 (1930) provides that "all devices or safeguards which are required by this Code at the erection, alteration or repair of any building shall be maintained in good working order." Defendant apparently agrees that handrails were required when the building was erected but contends that it did not violate the ordinance by purchasing a noncomplying house. We need not, and do not, decide that issue because the issue here is whether defendant violated the code by leasing a noncomplying house to plaintiff. In addition to construction and repair, the UBC regulates occupancy and uses, which includes residential leases. Moreover, the UBC unambiguously directs *all* required safeguards to be maintained in good repair. There are no exceptions for landlords. We therefore conclude that the duty imposed by ACO No. 39-35 applies to landlords.

At oral argument, defendant emphasized that requiring subsequent owners to comply with building codes that were in force at the time a building was constructed would provide a boon to the construction industry and would be unfair to the owners. Defendant's argument appears to be predicated on the assertion that plaintiff did not allege that the requirement for continuous handrails remained in effect after 1941, when plaintiff's residence was constructed.

We agree that plaintiff's pleading is not a model of clarity. However, for purposes of this analysis, we construe paragraphs 4 and 5 of plaintiff's complaint to allege that her fall resulted from the violation of building codes requiring a continuous handrail and that that requirement was in effect at the time of plaintiff's fall.

Apart from the pleadings issue, the Supreme Court has said that building construction and remodeling must comply with existing codes. *Landolt v. The Flame, Inc.*, 261 Or 243, 251, 492 P2d 785 (1972) (subsequent property owners are responsible for injuries caused by violation of building codes in effect at the time of construction). That does not

---

[3] The 1930 version of the UBC is the only version available to this court.

mean, and we do not hold, that owners of a building, built in compliance with existing codes, risk liability if the codes are later changed and the building remains in its original condition. However, when it is alleged that the property did not comply with building codes in effect at the time of construction and that the code remains in effect, liability may attach.[4]

██     Next, we consider whether "a failure to act as mandated was contemplated by the [legislative body] to give rise to a potential liability in tort[.]" *Scovill*, 324 Or at 169. Once again we begin by looking at the text and context. We find no express liability provision in the UBC, so plaintiff's right of action must exist by implication, if at all. In the absence of an express liability provision, we look for contextual clues indicating the legislative body's intent to provide a civil right of action. *Id*. at 169-70. Plaintiff makes no contextual argument. Instead, relying on *Bellikka*, 306 Or at 636, she asserts that the violation of building codes, enacted as safety regulations, provides her with a basis for statutory liability because she is a member of the protected class and was injured by the violation.

█     However, as *Bellikka* makes clear,

> " 'statutory tort' allows recovery of damages if the plaintiff can show that the damages suffered came about as a result of the violation of a statute which the legislature passed *intending to give recourse* to a group of plaintiffs[.]" *Id*. (emphasis added).

Thus, it is not enough that the City of Astoria intended to protect persons in plaintiff's position from injury. It must also have intended to provide injured parties with a right of action. Applying *Scovill* and *Bellikka*, we find nothing in the text or context of the ordinance to demonstrate that the City

---

[1] According to the Oregon Supreme Court:

"[I]t must be kept in mind that once a building code becomes effective, persons who own and operate buildings which have been built since adoption of the code or which have been altered in such a manner as to become subject to the code are responsible for injuries caused by doors installed in such a manner as to violate the building code, *regardless of whether such a person was the same person who built or altered the building or who installed the particular door*." *Landolt*, 261 Or at 251 (emphasis added; citation omitted).

of Astoria intended to provide plaintiff with a statutory cause of action.[5] Therefore, we conclude that the trial court did not err in dismissing plaintiff's first claim for relief.

■    In her second and third claims for relief, plaintiff alleges negligence *per se*. However, taking the claims out of order, we hold that plaintiff's third claim for relief—that defendant's failure, under the terms of the rental agreement, to comply with applicable building codes constitutes negligence *per se*—is time barred. ORS 12.125 (actions arising under rental agreements shall be commenced within one year). Thus, the trial court did not err in dismissing plaintiff's third claim for relief.

■    We turn to plaintiff's second claim for relief, alleging negligence *per se* based on violation of the building codes discussed above. In a negligence *per se* claim, the statute (or ordinance) defines the standard of care governing an underlying claim of negligence. *Shatout v. Emco Garbage Co.*, 298 Or 598, 601, 695 P2d 897 (1985).

The parties' arguments pertaining to negligence *per se* center on *Lapp v. Rodgers*, 265 Or 586, 510 P2d 551 (1973). In *Lapp*, a case with similar facts, the Supreme Court held that allegations about defendant's failure to provide a continuous handrail in violation of an ordinance could be the basis for a cause of action in negligence. Defendant acknowledges that *Lapp* was a negligence *per se* case but argues that this case is distinguishable because, although the defendant in *Lapp* conceded that a failure to meet the standard of care imposed by the ordinance would constitute negligence, defendant here makes no such concession. Rather, defendant asserts that negligence *per se* arises only when a duty is owed, sufficient to sustain a cause of action in negligence. *Shatout*, 298 Or at 601. Therefore, defendant argues, because

_____

[5] The ordinance provides enforcement authority to the City Building Inspector. UBC §§ 301 to 305 (1930). Violations are punished as misdemeanors by fine, imprisonment, or both. ACO 39-35, § 4. Section 4 provides:

"Any person violating any of the provisions of this ordinance shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than $1.00 or more than $300.00, or by imprisonment in the city jail for a term of not less than 1 or more than 100 days, or by both such fine and imprisonment, in the discretion of the court."

landlords generally have no duty to protect tenants from unconcealed (or patent) defects, without a concession such as the one in *Lapp*, no cause of action in negligence can lie.

We do not agree that *Lapp* can be read so narrowly — and, particularly, that its holding is dependent on the defendant's concession. In *Jenson v. Meyers*, 250 Or 360, 363, 441 P2d 604 (1968) — a dispute over the landlord's liability for injury to the lessee's social guest caused by a known hazard — the court explained that a lessor is not immunized from liability by virtue of the lease; rather, "the lessor is made liable upon the well accepted principle that one is liable for reasonably foreseeable harms." *See also Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987) (In the absence of a "special relationship," defendant could nevertheless be liable for conduct that "unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff."). Recently, in *Coulter Property Management, Inc. v. James*, 328 Or 164, 172-73, 970 P2d 209 (1998), the Supreme Court explained that *Jenson* recognized a cause of action in negligence against landlords for personal injuries from known hazards.

Arguing that this case is distinguishable from *Jenson* and *Coulter*, defendant points out that the Supreme Court in *Coulter* took care to maintain a distinction between a landlord's potential liability to tenants and their social guests. 328 Or at 173 (citing *Bellikka*, 306 Or at 640). That distinction is unavailing in this case. As *Jenson* makes clear, a landlord's exposure to liability for known hazards is based in part on the likelihood that the lessee will remedy the hazard, 250 Or at 363, leaving open the possibility that, in cases where the tenant is deemed unlikely to remedy the hazard, the landlord may be liable. Moreover, in *Lapp*, the case most factually similar to this case, the landlord was held liable to the tenant for negligence. Thus, Oregon courts have long recognized a common-law negligence action against landlords, and *Lapp* confirms that building codes can provide a standard of care for the underlying negligence claim. Plaintiff's complaint adequately alleges injury caused by defendant's violation of applicable building codes. Accordingly, the trial court erred in dismissing plaintiff's second claim for relief.

■ Similarly, the trial court erred in dismissing plaintiff's negligence claim, her fourth and final claim for relief. As discussed above, Oregon recognizes a tenant's right to bring a negligence claim against a landlord for injuries caused by a known hazard. *Jenson*, 250 Or at 363. Defendant's argument that this case is governed by the general rule of nonliability in Section 356, *Restatement (Second) of Torts* (1965), is inapposite because section 356 is not the law in Oregon. *Coulter*, 328 Or at 172. In summary, we hold, for the reasons discussed, that the trial court properly dismissed plaintiff's first and third claims for relief; however, it erred in dismissing her second and fourth claims for relief.

■ Plaintiff argues that the trial court erred in denying her motion for summary judgment. She asks this court to enter summary judgment in her favor and remand the issue of damages for trial. Even assuming that the denial of plaintiff's motion for summary judgment is reviewable in this case, *see To v. State Farm Mutual Ins.*, 123 Or App 404, 410, 860 P2d 294 (1993), *aff'd in part, rev'd in part* 319 Or 93, 873 P2d 1072 (1994), we conclude that there are issues of material fact that preclude summary judgment. We therefore decline to order entry of summary judgment in plaintiff's favor.

Dismissal of second and fourth claims for relief reversed; otherwise affirmed.