Argued and submitted June 14, vacated in part; otherwise affirmed
September 5, 2001

ADVOCATES FOR EFFECTIVE REGULATION;
Agripac, Inc.,
an Oregon corporation;
Bulk Handling Systems, Inc.,
an Oregon corporation;
Cascade Plating & Machine, Inc.,
an Oregon corporation;
Gheen Irrigation Works, Inc.,
an Oregon corporation;
Laurence David, Inc.,
an Oregon corporation;
Molecular Probes, Inc.,
an Oregon corporation;
Newood Products of Oregon, Inc.,
an Oregon corporation;
Purakal Industries, Inc.,
an Oregon corporation;
States Industries, Inc.,
an Oregon corporation;
Trus Joist MacMillan,
an Idaho corporation;
The Willamette Valley Co.,
an Oregon corporation;
and Clarke's Sheet Metal, Inc.,
an Oregon corporation,
*Appellants,*

*v.*

CITY OF EUGENE,
an Oregon municipal corporation,
*Respondent,*

*and*

TOXICS RIGHT TO KNOW COMMITTEE,
an Oregon political committee;
Jennifer Gleason, Steve Johnson,
and Mary O'Brien, individually,
*Intervenors - Respondents.*

16-96-11202; A109190

32 P3d 228

Thomas R. Wood argued the cause for appellants. With him on the briefs were Charles F. Adams and Stoel Rives LLP.

Jerome Lidz argued the cause for respondent. With him on the brief was Harrang Long Gary Rudnick P.C.

Charles M. Tebutt argued the cause for intervenors - respondents. With him on the brief was Western Environmental Law Center.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Brewer, Judge.

LANDAU, P. J.

## LANDAU, P. J.

At issue in this case is the validity of the City of Eugene "Right to Know Initiative" (Initiative), a voter-approved charter amendment that imposes fees and reporting requirements on users of hazardous substances. The trial court upheld the Initiative, and plaintiffs, a number of businesses subject to the Initiative, appealed. We concluded that three articles of the Initiative are invalid and remanded to the trial court to determine whether those invalid articles are severable from the Initiative. *Advocates for Effective Regulation v. City of Eugene*, 160 Or App 292, 981 P2d 368 (1999). Specifically, we held that the user fee collected under the Initiative was preempted by state law, which requires that local government assessments of hazardous substance fees based on the quantity of hazardous substances be used solely to supplement and not to duplicate State Fire Marshal hazardous substance regulations. *Id.* at 300-05. We further held that the portions of the Initiative that regulated pesticides were preempted by state law prohibiting the local regulation of pesticides. *Id.* at 305-09. Finally, we held that the Initiative was invalid to the extent that it purported to incorporate into the definition of "hazardous substances" materials that federal regulatory authorities may decide to regulate at some time in the future. *Id.* at 311-12.

On remand, the trial court concluded that the invalid articles were severable from the Initiative. In particular, the court severed the portion of the Initiative that imposes a user fee on the basis of the quantity of hazardous substances used. In addition, the court issued a declaration as to the scope of the state statute that preempts local regulation of pesticides. The court also ordered a refund of any quantity-based fees collected under the Initiative. The court, however, declined plaintiffs' request for an award of prejudgment interest on the fees.

Plaintiffs again appeal, asserting that the trial court erred on remand in three respects. First, plaintiffs argue that the trial court erred in simply striking from the Initiative the quantity-based fee. According to plaintiffs, the court should have declared that the fee was so integral to the Initiative

that it could not be severed from it; in other words, plaintiffs argue, the trial court should have declared the entire Initiative invalid. Second, plaintiffs argue that the trial court erred in attempting to narrow the scope of this court's holding as to the preemption of local regulation of pesticides by redefining what "pesticides" means. Third, plaintiffs argue that the trial court erred in declining to award prejudgment interest on the quantity-based fees that were unlawfully collected.

We hold that the trial court did not err in striking from the Initiative the quantity-based fee and, in effect, concluding that the offending article was severable from the enactment as a whole. We hold, however, that the trial court did err in issuing what was, in effect, an advisory opinion as to the meaning of the state statute preempting local regulation of pesticides. Finally, we hold that the trial court did not err in declining to award prejudgment interest on the refunded quantity-based fees.

■     We begin with the trial court's decision with respect to the severability of the quantity-based fee. Article VII of the Initiative imposes a fee on any user of hazardous substances that employs at least 10 people and has annual inputs of at least 2,640 pounds of any hazardous substance. If the user has annual inputs of less than 2,640 pounds, it is not required to pay a fee. The revenues generated by the fee are to be used to finance a regulatory program that requires covered users to submit annual reports identifying, quantifying, and tracing the flow of hazardous substances into a user's facilities, through its processes, and into its products and wastes.

We held that the fee to be collected under the initiative was a fee "based on quantity" within the meaning of ORS 453.402(6), which provides that any fees based on quantity of hazardous substances "shall be used solely to supplement and not to duplicate the State Fire Marshal's programs" of hazardous substance regulation. *Advocates for Effective Regulation*, 160 Or App at 303. We noted that, by itself, that did not mean that the fee was prohibited; it simply meant that the revenues generated by the fee must be used "solely to supplement and not to duplicate" the State Fire Marshal's regulatory programs. *Id.* We then examined the particulars

of the regulatory program required by the Initiative and concluded that it duplicated, at least in part, the State Fire Marshal's hazardous waste regulatory programs and, on that basis, declared that the fee was preempted by state law. *Id.* at 304-05.

The parties suggested to us that we determine whether the fee provisions nevertheless were severable from the Initiative as a whole. Because they had not presented that issue to the trial court, we declined to address it for the first time on appeal. *Id.* at 313.

On remand, plaintiffs argued that the fee provisions are so integral to the operation of the regulatory program created by the Initiative that the entire Initiative must be declared invalid. The City of Eugene (City) and intervenors, the Toxics Right to Know Committee and several of its members (intervenors), argued that the offending quantity-based fee should be simply severed from the rest of the Initiative, in accordance with the severability clause included in the Initiative itself, which provides:

> "If any section, subsection, paragraph, phrase or word (hereafter the parts) of this Act shall be held to be unconstitutional, void, or illegal, either on its face or as applied, this shall not affect the applicability, constitutionality, or legality of any other parts hereof; and to that end, the parts of the Act are intended to be severable. It is hereby declared to be the intent of this Act that the same would have been adopted had such unlawful or unconstitutional provisions, if any, not been included herein."

The trial court agreed with the City and intervenors and entered judgment declaring that:

> "Article VIIA of Section 54 of the Eugene Charter is invalid and unenforceable insofar as it requires fees to be paid only by businesses that have inputs of more than a specified quantity of hazardous substances."

On appeal, plaintiffs contend that the trial court exceeded its authority in effectively "rewriting" the Initiative so that it now permits an alternative fee structure extending to all users, regardless of the quantity of hazardous substances that they may use. Plaintiffs acknowledge that the Initiative contains a broad severability clause, but they insist

that such clauses cannot be invoked to sanction a modification of the enactment in such a way that "flatly contradicts a fundamental aspect of what was passed by the voters." According to plaintiffs, the voters clearly intended the Initiative to be funded by means of a quantity-based fee, and to permit the Initiative to be funded in any other way does violence to the expressed will of those voters.

The City and intervenors contend that the trial court's decision is entirely consistent with the voters' intentions, as evidenced by the inclusion of a broad severability clause. They argue that the trial court did not rewrite the Initiative any more than severing any offending portion of an enactment has a "rewriting" effect on the enactment.

■■ Whether an invalid provision is severable from the enactment of which it is a part is a question of legislative intent. *Fullerton v. Lamm*, 177 Or 655, 697, 165 P2d 63 (1946). Thus, if there is an explicit severability clause, our role is to construe it as we would any other enactment, that is to say, in a manner that best reflects the intentions of the voters or the legislative entity that enacted it. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993) (intent is the touchstone of statutory construction); *Eduardo v. Clatsop Community Resource*, 168 Or App 383, 387, 4 P3d 83 (2000) ("ordinances are construed using the familiar *PGE* analysis"). If there is no express severability clause, the law provides a presumption of severability, which may be overcome only if (1) the enactment provides that the remaining parts shall not remain in effect; (2) the remaining parts are so dependent on the invalid part that the remaining parts would not have been enacted without the invalid part; or (3) the remaining parts, standing alone, are incomplete and incapable of being executed in accordance with legislative intent. ORS 174.040.[1]

---

[1] Strictly speaking, ORS 174.040 applies only to enactments of the Legislative Assembly. However, the statute was enacted as a codification of the common-law presumption that courts apply to any enactments that fail to contain a severability clause. *State v. Jackson*, 224 Or 337, 343, 356 P2d 495 (1960); *see also D.S. Parklane Development, Inc. v. Metro*, 165 Or App 1, 16, 994 P2d 1205 (2000) (same severability principles that apply to statutes also apply to municipal ordinances).

In this case, the Initiative contains an express, broadly worded severability clause, which provides that, if any portion of the Initiative is declared to be invalid, it is the intention of the voters that it be severed from the remainder. There is nothing ambiguous about the intentions of the voters regarding the issue of severability.

Plaintiffs' argument to the contrary—that severability is contrary to the manifest intentions of the voters to have a quantity-based fee—is not persuasive. Obviously, the voters intended the quantity-based fee to be given effect. That is why they enacted it. Indeed, to adopt a rule that courts cannot sever a portion of an enactment that the voters intended be given effect would mean that nothing ever could be severed. Moreover, to adopt such a rule would fail to give effect to the severability clause itself, a part of the enacted legislation that also must be given effect in accordance with the intentions of those who enacted it.

There remains the question whether the particular manner in which the court applied the severability clause is consistent with the intentions of the voters. As we have noted, our holding that the fee provisions of the Initiative were preempted was a narrow one. We expressly declined to hold that the use of a quantity-based fee itself was unlawful. Instead, we held that ORS 453.402(6) preempts such fees only to the extent that they are not used "solely to supplement and not to duplicate" state hazardous waste programs. *Advocates for Effective Regulation*, 160 Or App at 303. We concluded that, in this case, the quantity-based fees required by the Initiative were preempted because they were used for programs that, in part, duplicated state programs. *Id.* at 305.

That means that, to avoid a conflict with ORS 453.402(6), the trial court could have severed the Initiative in either of two ways: First, it could have severed the substantive regulatory requirements that overlapped or duplicated the state Fire Marshal programs; second, it could have severed the quantity-based fee collection limitation, so that the City is no longer limited to collecting fees from particular users. Thus framed, the choice is not difficult. The *raison d'etre* of the Initiative is the establishment of a local system of public reporting of the use of hazardous substances because

exposure to such substances poses a threat to human health and the environment and because, in the words of the Initiative itself,

> "citizens have a fundamental right to know the identity and amounts of toxic chemicals that are released into the workplaces, air, water, soil, and environment of their community."

Public information, not a particular funding mechanism, is the overriding concern of the Initiative. We presume that the voters would have desired severing in a manner that does the least damage to that overriding concern. Invalidating substantive reporting requirements constitutes a far greater interference with that purpose than does removing an offending limitation on the sources of funding for it.

Citing *Automobile Club v. State of Oregon*, 314 Or 479, 840 P2d 674 (1992), plaintiffs complain that it simply is not the prerogative of the courts to make such choices. The objection is not well-taken. There nearly always is more than one way to sever a statute, a portion of which has been declared invalid. The only question is whether the choice best reflects the intentions of those who enacted the legislation at issue.

*Automobile Club* is not to the contrary. In that case, the court held unconstitutional a statute that would have funded environmental protection programs out of revenues derived from a motor vehicle emission fee. The court held that the statute violated state constitutional limitations on the uses of revenues derived from the taxes on motor vehicle use. 314 Or at 494-95. The state argued that at least some of the uses of the motor vehicle emission fee were permissible and that the statute should be upheld at least to that extent. *Id.* at 494. The court held that it would not redraft the statute so that all of the revenues would apply to the permissible uses. *Id.* At best, the case stands for the unremarkable proposition that not all enactments are severable.[2] Nowhere in

---

[2] Indeed, if anything, the case suggests that, had the trial court in this case attempted to limit the expenditure of quantity-based fee revenues to only permitted regulatory programs, it would have been on shaky ground.

the decision did the court suggest the broader rule that plaintiffs propose, that is, that courts cannot choose from among competing ways to accomplish severing an invalid provision.

*Vannatta v. Keisling*, 324 Or 514, 931 P2d 770 (1997), is closer to the point. In that case, the court addressed the constitutionality of a statute enacted by the people that regulated political campaign finance expenditures, contributions, and reporting. The court held that the statute's regulation of campaign contributions violated the free speech guarantees of Article I, section 8, of the Oregon Constitution. *Id.* at 541. The court then turned to the application of the statute's severability clause. According to the court, the clause "is a directive by the people to this court to conduct a 'clean up' function, *i.e.,* to examine the impact of our constitutional rulings on the balance of the provisions" of the statute and to determine which, if any, sections could be saved. *Id.* at 546. That is precisely what the trial court did in this case.

Plaintiffs insist that the existence of a severability clause raises only a presumption of severability and that, under the two-step analysis that has been applied by at least one federal district court, *Confederated Tribes of Siletz Indians v. U.S.*, 841 F Supp 1479, 1489 (D Or 1994), *aff'd on other grounds* 110 F3d 688, *cert den* 522 US 1027 (1997), a court still must decline to sever if the remaining portions of the statute would not be capable of independent functioning or if the independent survival of the remainder would have been contrary to the intention of the voters. To begin with, plaintiffs fail to explain persuasively why this case is controlled by federal law. Moreover, even assuming the applicability of the two-part analysis that plaintiffs advance, nothing in the Initiative suggests either that the remaining portions are not capable of independent functioning or that the voters who enacted it would have preferred invalidation of the enactment in its entirety over severing the quantity-based fee limitation.

We conclude that the trial court's severability decision in this case was correct and that it did not err in declaring invalid the quantity-based fee provision of the Initiative.

■ We turn to the trial court's declaration concerning the effect of the preemption of local regulation of pesticides. Article III of the Initiative defines "hazardous substance" to include pesticides listed pursuant to federal and state pesticide law. We held that that definition ran afoul of ORS 634.006(8)(h), which expressly preempts "local regulation of pesticides." *Advocates for Effective Regulation*, 160 Or App at 308-09. On remand, the parties debated the appropriate test by which it could be determined what is a "pesticide," the regulation of which is preempted by ORS 634.006(8)(h). The trial court responded by including in its judgment a declaration that the definitions of "extremely hazardous substance" and "hazardous substance" in the Initiative

> "shall not be interpreted or enforced to include pesticides as defined in ORS 634.006(8), *except insofar as the substance is covered by another statute listed in Article IIIA or IIIE and is used by the covered person or entity for purposes other than as a pesticide.*"

(Emphasis added.)

Plaintiffs complain that the court erred in fashioning an exception to the statutory definition of "pesticide." The City concedes that the foregoing emphasized language in the judgment is not necessary to the disposition of any issue before the court on remand, but it suggests that the added language provides a "useful clarification" of the law. Intervenors similarly do not argue that the additional language is *required* to address any issue in this case, but they suggest that it closes "potential loopholes" in the Initiative. In any event, the City and intervenors argue, the language is entirely consistent with state and federal pesticide law.

We express no opinion on the validity of the "exception" to the definition of pesticide that the trial court included in its judgment because we conclude that the trial court erred in addressing the matter at all. While it may have been "useful" in some larger sense, the judgment amounts to an advisory opinion that was not necessary to the disposition of any issue before the court on remand.

■ We turn, then, to the remaining matter of the trial court's denial of plaintiffs' request for prejudgment interest

on the quantity-based fees that were collected under the Initiative. Plaintiffs argue that, because the exact amount of fees wrongfully obtained and the time from which interest could run both are easily ascertained, there is no reason not to require the City to pay prejudgment interest. The City counters that prejudgment interest is not available against a public body in the absence of a statute or contract allowing it. Plaintiffs reply that, in at least one case, *Public Market Co. v. Portland*, 171 Or 522, 130 P2d 624 (1942), *on reh'g* 138 P2d 916 (1943), the court held that, in equity cases, the general rule does not apply. The City rejoins that plaintiffs misread *Public Market Co.*

■ The City is correct that "in the absence of a statute or contract allowing it, prejudgment interest is not available on a claim against a public agency." *Harrington v. Board of Trustees*, 100 Or App 733, 737, 788 P2d 1019, *rev den* 310 Or 133 (1990). The City also is correct that *Public Market Co.* cannot fairly be read to stand for the broad exception to that general rule that plaintiffs urge.

In *Public Market Co.*, the plaintiffs entered into a contract with the City of Portland to construct a market building to be operated as a public utility. Among other things, the contract required the City of Portland to create a fund from which the plaintiffs would be paid. The City of Portland, however, failed to create the fund and instead passed a resolution that, in effect, denied the existence of the contract. The plaintiffs brought a claim in equity for specific performance. The court found for the plaintiffs, but it also concluded that, at that point, the remedy of specific performance would have been "an idle gesture." *Public Market Co.*, 171 Or at 587. The court instead concluded that the City of Portland's failure to create the required fund entitled the plaintiffs to damages in tort. *Id.* at 589.

On rehearing, the plaintiffs asked the court to consider prejudgment interest on the damages. The court held that the City of Portland certainly would have been liable for the interest under the terms of the contract. *Id.* at 627. The court reasoned that it should not be able to escape that contractual liability by disaffirming the contract:

"In the instant case, if the city had created the fund but refused to pay the money, it would have been liable for interest under the terms of the contract. Why its liability should be any the less because it refused to create the fund, thus compelling the plaintiff to resort to the only remedy left open to it—what is technically an action for tort, but in substance one based on the breach of a contractual obligation—, is not easy to perceive."

*Id.* Thus, the court allowed the prejudgment interest because, in substance, the plaintiffs sought enforcement of the terms of a contract that provided for that remedy.

In this case, plaintiffs cite neither a statute nor a contract that provides for an award of prejudgment interest against the City. *Public Market Co.* is inapposite, and the general rule prohibiting awards of prejudgment interest against public bodies applies. The trial court therefore did not err in declining to require the City to pay such interest on the fees collected under the Initiative.

Portion of judgment excepting substances from statutory definition of "pesticides" vacated; otherwise affirmed.