SHORR, J.
*1002 *670 Plaintiffs, a group of businesses located within the City of Eugene (city), appeal a judgment of the trial court declaring that Eugene's "hazardous substance user fee," which was enacted by the city council in 2001 as part of the Eugene City Code (Eugene Code), is valid. Plaintiffs also challenge the validity of hazardous substance reporting requirements-part of a Toxics Right-to-Know program-enacted as an amendment to the city charter by the city's voters. We conclude that the trial court did not err when it entered a judgment declaring that the city's imposition of the hazardous substance user fee on plaintiffs does not violate ORS 453.402(6), section 2.1 and section 3.F of Amendment IV of the Eugene City Charter (Eugene Charter), or ORS 453.370(9). We also conclude that plaintiffs lack standing to challenge various exemptions to the reporting program found in Amendment IV of the Eugene Charter. Accordingly, we affirm.
I. FACTUAL AND PROCEDURAL BACKGROUND
This case has a long and complex procedural background that involves amendments to the Eugene Charter, the city's constitutional document, by initiative and subsequent amendments to the Eugene Code. In 1996, the city's voters enacted Amendment IV (the initiative) to the Eugene Charter. The initiative created a "Toxics Right-to-Know" program, formed a City Toxics Board, and mandated that all "hazardous substance users" comply with annual reporting requirements. Under the initiative, a "hazardous substance user" is defined as an owner or operator of a commercial or public facility in the city with 10 or more full-time equivalent employees (FTEs) and an annual input of more than 2,640 pounds of hazardous substance. Eugene Charter § 54(3)(F). Under article VII of the initiative, those users were required to pay an annual fee to fund the reporting program, which was to be "self-supporting" and "funded wholly by hazardous substance user fees." Id. § 54(7)(B), (D). The initiative also contains a broadly worded severability clause, which provides:
"If any section, subsection, paragraph, phrase, or word (hereafter the parts) of this Section shall be held *671 unconstitutional, void, or illegal, either on its face or as applied, this shall not affect the applicability, constitutionality, or legality of any other parts hereof; and to that end, the parts of the Section are intended to be severable. It is hereby declared to be the intent of this Section that the same would have been adopted had such unlawful or unconstitutional provisions, if any, not been included herein."
Id. § 54(11).
In 1999, a group of businesses in the city challenged the validity of the initiative. Those entities argued, in part, that section VII(A) of the fee provision-which only imposed fees on "hazardous substance users" as defined by the initiative-was barred by ORS 453.402(6), under which
"[l]ocal government assessments of hazardous substance fees based on quantity * * * shall be used solely to supplement and not to duplicate the State Fire Marshal's programs under ORS 453.307 and 453.414 and shall be billed and collected only through contract with the State Fire Marshal."
Ultimately, we agreed with the businesses and held that the fee provision was invalid because it imposed a quantity-based fee-in that the fee was only imposed on entities that used more than 2,640 pounds of hazardous substance and met other criteria-and was not used solely to supplement the State Fire Marshal's programs. Advocates for Effective Regulation v. City of Eugene , 160 Or. App. 292, 303-05, 981 P.2d 368 (1999) ( Advocates I ).
On remand, the trial court severed section VII(A) of the fee provision from the initiative pursuant to the initiative's severability clause. The court held that the initiative was invalid "insofar as it requires fees to be paid only by businesses that have inputs of more than a specified quantity of hazardous substances." As a result of the court's ruling, the *1003 reporting program remained part of the initiative and all "hazardous substance users" as defined therein were still subject to the reporting requirements, but the reporting program lacked a specific funding mechanism.
Plaintiffs appealed once more, arguing that the trial court erred in severing the fee provision rather than invalidating the initiative in its entirety. Plaintiffs argued *672 that "the voters clearly intended the Initiative to be funded by means of a quantity-based fee," which meant that the right-to-know program could not survive without such a funding mechanism. Advocates for Effective Regulation v. City of Eugene , 176 Or. App. 370, 376, 32 P.3d 228 (2001) ( Advocates II ). We affirmed the court's decision after concluding that the invalid quantity-based fee provision was severable from the initiative. Id. at 377, 32 P.3d 228. We first acknowledged that the voters adopted the initiative with the understanding that the reporting program would be funded by a quantity-based fee. But, we explained, "the raison d'etre of the initiative is the establishment of a local system of public reporting of the use of hazardous substances because exposure to those substances poses a threat to human health and the environment." Id. at 377-78, 32 P.3d 228. We determined that "public information, not a particular funding mechanism, is the overriding concern of the initiative." Id. at 378, 32 P.3d 228. We therefore presumed that "the voters would have desired severing in a manner that does the least damage to that overriding concern" and concluded that "[i]nvalidating substantive reporting requirements constitutes a far greater interference with that purpose than does removing an offending limitation on the source of funding for it." Id . Based on our decision, the right-to-know reporting program established by the initiative remained in effect, but the initiative itself did not contain a specific funding mechanism for the program.
Between our decisions in Advocates I and Advocates II , the city enacted a "hazardous substance user fee" as part of the city code. Eugene Code 3.690 - 3.696 (the fee provision). The city adopted the new fee provision to provide "procedures for payment by certain businesses that use hazardous substances of the hazardous substance user fees * * * in a manner consistent with article VII of amendment IV of the Eugene Charter of 2002 (the amendment), taking into consideration the mandate of the courts in the litigation involving the amendment." Id . at 3.690.
Although the city enacted the fee provision to fund the initiative, the fee provision defines covered "hazardous substance users" and "facilities" differently from the initiative. As noted above, the initiative defines a "hazardous *673 substance user," i.e. , those entities that must comply with the reporting requirements, as the owner or operator of a facility with 10 or more FTEs and an annual input of more than 2,640 pounds of hazardous substances. Eugene Charter § 54(3)(F). The initiative defines covered facilities, in turn, as "buildings, equipment, structures and other stationary items that are located and operated on a single site or on contiguous or adjacent sites that are owned or operated by the same person(s) and relate to a common product or service," id. § 54(3)(D), and that (1) are also within the SIC Categories of #20-#39,[1] (2) are "solid waste incinerators that accept infectious waste," and (3) are "hazardous waste disposal incinerators," id. § 54(2.1)(A).
Under the Eugene Code's fee provision, by contrast, a "hazardous substance user," i.e. , those entities that must pay a user fee, is defined as
"[a]ny business that operates a stationary facility within the city limits of Eugene that:
"(a) Has ten or more FTEs;
"(b) Has a SIC code between [20 and 39] inclusive; and
"(c) Uses any quantity of hazardous substances (above zero) in its manufacturing processes."
Eugene Code 3.692. Covered facilities include "buildings, equipment, structures, and other stationary items that are located and operated on a single site or on contiguous or adjacent *1004 sites that are owned or operated by the same person(s) and related to a common product or service." Id . The fee provision goes on to impose a fee on those users in "an amount per FTE and shall be paid annually," and provides that the "specific amount of the fee shall be established by resolution of the city council." Id . at 3.694.
Plaintiffs in this case brought an action against the city as defendant and challenged the validity of the fee provision on a number of grounds in the trial court. Plaintiffs asserted only claims for declaratory relief that essentially sought declarations that the fee provision conflicted with *674 state law or the city charter. The parties filed cross-motions for summary judgment. The trial court granted the city's motion, denied plaintiffs' motion, and issued a general judgment declaring that the fee provision was valid in its entirety.
On appeal, plaintiffs contend that the trial court erred when it declared that the fee provision did not violate state law or the city charter. Plaintiffs make the following four arguments: First, the fee provision assesses an impermissible quantity-based fee in violation of ORS 453.402(6) ; second, the fee provision impermissibly imposes fees on facilities that are not subject to the reporting requirements in the initiative; third, the fee provision imposes fees based on a definition of "hazardous substance user" that conflicts with the initiative's definition; and, fourth, the fee provision and the reporting program both exempt certain public employers, which is prohibited by ORS 453.370(9), a statute placing limitations on community right-to-know programs. Where, as here, there are no issues of material fact, we review the trial court's decision on the parties' cross-motions for summary judgment to determine whether either of the parties was entitled to judgment as a matter of law. Advocates I , 160 Or. App. at 297, 981 P.2d 368.
II. ANALYSIS
A. Plaintiffs' First Assignment of Error
In their first assignment of error, plaintiffs assert that the trial court erred when it declared that the city's imposition of a hazardous substance user fee did not violate ORS 453.402(6), contending that the fee provision constitutes a "quantity-based fee" on hazardous substance users. Local governments may not assess quantity-based hazardous substance user fees unless the fees support a program that exists "solely to supplement and not to duplicate the State Fire Marshal's programs under ORS 453.307 and 453.414." ORS 453.402(6). The reporting program adopted through the initiative does not exist solely to supplement the fire marshal's hazardous substance reporting program. Advocates I , 160 Or. App. at 305, 981 P.2d 368. Accordingly, the program may not be funded by quantity-based fees. Id. at 303, 981 P.2d 368.
*675 In Advocates I , we explained that a fee is "based on quantity" when "the quantity of hazardous substance used" is a "principal component of determining whether a user pays a fee." Id. at 302, 981 P.2d 368. Plaintiffs contend that Eugene Code 3.694 imposes a quantity-based fee on a hazardous substance user because that entity is defined, in part, as a business that operates a stationary facility that "uses any quantity of hazardous substances (above zero )." Eugene Code 3.692 (emphases added). Based on that language, plaintiffs argue that the quantity of hazardous substances used is a "principal component of the determination" of whether any user pays a fee.
Plaintiffs' argument is unconvincing. A hazardous substance user must, by definition, "use" a hazardous substance. Webster's Third New Int'l Dictionary 2523-24 (unabridged ed. 2002) (defining a "user" as "one that uses" and "use" as "the act or practice of using something" and "to expend or consume by putting to use"). The challenged definition in Eugene Code 3.692 expressly establishes that connection by defining "hazardous substances user," in part, as an entity that uses "any quantity of hazardous substance (above zero)." The mere reference to quantity in the definition does not indicate that the fee is "quantity-based."
The fee provision bases the fee on conditions unrelated to quantity. The fee provision further defines a "hazardous substance user" as an entity that employs 10 or more FTEs *1005 and has a given SIC designation, and, for entities that meet that definition, calculates and assesses a fee based on the number of FTEs. As a result, an entity with 15 FTEs that uses many tons of hazardous substances will pay the same user fee as a business with 15 FTEs that uses a single ounce of hazardous substances. At the same time, an entity that uses many tons of hazardous substances, but employs fewer than 10 FTEs, will not pay a fee at all. The fee provision, in other words, first establishes the obvious fact that a "hazardous substance user" must use some amount of hazardous substances above zero and then imposes a fee on certain of those users based entirely on other, nonquantity factors. See Advocates I , 160 Or. App. at 303, 981 P.2d 368 ("Local governments remain free to determine any number of alternative *676 thresholds; quantity of hazardous substances certainly is not the only available criterion of determining the scope of regulatory authority.").
Indeed, it is axiomatic that any fee provision that imposes a fee on hazardous substance users must, even if only implicitly, first distinguish between entities that use hazardous substances and those that do not. A fee provision that distinguishes between use and nonuse is different from one that goes a step further and imposes fees on those entities that use hazardous substances when that use passes specified numeric thresholds. The former kind of provision, like the one at issue in this case, is concerned only with whether an entity uses hazardous substances at all, not whether a particular quantity of substance is used. By contrast, the latter kind of provision, like the one we concluded was invalid in Advocates I , relies on a quantity-based threshold to impose regulations on a subset of businesses from the totality of those that use hazardous substances. That is, the fee provision at issue in Advocates I first implicitly distinguished between users and nonusers and then expressly distinguished among users based on quantity of hazardous substances used. We concluded in that case, and reiterate here, that it was that second step-where hazardous substance users were separated into subsets or tiers based on the quantity of hazardous substances that they used-that conflicted with ORS 453.402(6), not the initial step of distinguishing between users and nonusers. See Advocates I , 160 Or. App. at 303, 981 P.2d 368 (fee provision in the initiative was quantity-based because it established a "two-tiered fee, triggered by a quantity of hazardous substances"). In short, the reference to "quantity" in Eugene Code 3.692 exists to distinguish use from nonuse rather than greater use from lesser use. Only the latter is a quantity-based, as opposed to use-based, distinction.[2]
In sum, the definition of "hazardous substance user" in Eugene Code 3.692 distinguishes between users *677 and nonusers but does not draw a distinction based on the amount of hazardous substances used by any user. As a result, we conclude that the fee provision does not assess a "quantity-based fee" and, therefore, the trial court did not err in declaring that the city's imposition of the fee provision on plaintiffs does not violate ORS 453.402(6).
B. Plaintiffs' Second and Third Assignments of Error
In their second and third assignments of error, plaintiffs assert that the trial court erred in declaring that the fee provision does not violate the initiative, sections 2.1 and 3(F), because, plaintiffs contend, the fee provision impermissibly assesses a fee on a broader range of "facilities" and "hazardous substance users" than are subject to the reporting requirement as defined by those sections of the initiative. Plaintiffs explain that they operate covered facilities and are identified as "hazardous substance users" under the fee provision but not under the initiative. They contend that that discrepancy creates an impermissible conflict between the fee provision and the initiative and that the fee provision is void as a result.
*1006 The city may not amend the city code in a manner that conflicts with the city charter. See Portland Police Assn. v. Civil Service Board of Portland , 292 Or. 433, 440, 639 P.2d 619 (1982) ("A city's charter is, in effect, the city constitution. Any city ordinance, rule, or regulation in conflict with its provisions is void."). However, under Chapter II of the Eugene Charter, the city retains significant authority to adopt rules and ordinances that regulate entities also regulated by the charter itself. Under section 4(1) of Chapter II, "all power of the city is vested in the city council," except as expressly provided by the charter. Eugene Charter § 4(1). The charter further establishes that the city "has all powers that the constitution or laws of the United States or of this state expressly or impliedly grant or allow cities, as fully as if this charter specifically stated each of those powers." Id. § 4(2). Finally, the charter provides that "no mention of a particular power [in the charter] may be construed to be exclusive or to restrict the scope of the powers that the city would have if the particular power were not mentioned." Id. § 4(3).
*678 With that framework in mind, we turn to the fee provision. While the fee provision does not contain any language identifying the source of the city's authority to impose a fee on hazardous substance users, we conclude that the city had the authority to enact the fee provision under its general home-rule authority, as set forth in Chapter II of the Eugene Charter and authorized by Article XI, section 2, of the Oregon Constitution.[3] See AT&T Communications v. City of Eugene , 177 Or. App. 379, 389, 35 P.3d 1029 (2001), rev. den. , 334 Or. 491, 52 P.3d 1056 (2002) (explaining that Oregon's constitutional "home rule" provisions permit "the people of cities or towns to determine for themselves the organization and powers of their local governments without the need to obtain authority from the state legislature"); see also Eugene Charter § 4 (broadly conferring all authority not specifically denied by state or federal statute or constitution). The city's authority to enact a hazardous substance user fee does not stem from the initiative itself. Nor does the initiative or any other provision of the Eugene Charter establish that the city may assess hazardous substance user fees only on those hazardous substance users that are subject to the initiative's reporting requirements. See Ramirez v. Hawaii T & S Enterprises, Inc. , 179 Or. App. 416, 426, 39 P.3d 931, rev. den. , 335 Or. 114, 61 P.3d 256 (2002) (Portland City Code provision making landowners liable for injuries on sidewalks and curbs adjoining property not void despite more restrictive limitations on such liability in the charter because the charter did not purport to provide the "only" means by which such landowners could be held liable).
Having determined that the city had the general authority to enact the fee provision, we turn to whether the fee provision conflicts with the initiative. We initially note that there is no dispute that more facilities are covered by the fee provision and more businesses potentially meet its definition of "hazardous substance user" than under the initiative. Under the initiative, section 3(D), and the fee provision, Eugene Code 3.692, a "facility" is defined as "buildings, equipment, structures, and other stationary items that *679 are located and operated on a single site or on contiguous or adjacent sites that are owned or operated by the same person(s) and relate to a common product or service."[4] Facilities are only subject to the reporting requirement if they are also "solid waste incinerators that accept infectious waste" and "hazardous waste disposal incinerators."[5] Eugene Charter § 54(2.1)(A). Under Eugene Code 3.694, by contrast, any facility that otherwise meets the definition of "hazardous substance user" under Eugene Code 3.692, *1007 and is not expressly exempt, must pay a hazardous substance user fee. Thus, covered facilities under the fee provision need not be "solid waste incinerators that accept infectious waste" and "hazardous waste disposal incinerators."
The definition of "hazardous substance user" also differs between the initiative and the fee provision. Only entities that operate a covered facility that uses more than 2,640 pounds of hazardous substance annually could be a "hazardous substance user" with respect to the reporting requirement in the initiative, subject to other limitations and exemptions. Eugene Charter § 54(3)(F). By contrast, any entity that operates a facility that uses "any quantity of hazardous substances (above zero)" could be a "hazardous substance user" with respect to the fee provision, also subject to other limitations and exemptions. Eugene Code 3.692.
While the initiative and the fee provision differ in some respects, and the fee provision applies more broadly than the reporting program it was enacted to fund, we conclude that the two do not conflict. The initiative does not provide an exclusive definition of "facility" or "hazardous substance user" in all areas of regulation and does not require that all rules, regulations, and ordinances intended to supplement or support the reporting program adopt the initiative's definitional language. Instead, the initiative provides that its definitions apply only "[a]s used in this *680 section." Eugene Charter § 54(3). Similarly, the city council enacted the fee provision "notwithstanding any definitions" in the initiative. Eugene Code 3.692. As discussed above, the fee provision was independently enacted by the city pursuant to its general home rule authority after the quantity-based fee provision in the initiative was declared void in Advocates I and subsequently severed, which we upheld in Advocates II .
In Advocates II , we determined that the reporting scheme was "capable of independent functioning" even without a "quantity-based fee limitation." 176 Or. App. at 379, 32 P.3d 228. Thus, even after the trial court severed the funding limitation from the initiative, the initiative still constituted a functional regulatory program with its own set of criteria and limitations to govern its operation. We are not convinced that the definitional limitations in the initiative implicitly extend to other regulatory programs-even when those programs are enacted to supplement or support the initiative. Accordingly, while the initiative codifies the city's power to subject certain entities that use hazardous substances to annual reporting requirements, the initiative does not prevent the city from independently assessing hazardous substance user fees based on different criteria. Compare Ramirez , 179 Or. App. at 426, 39 P.3d 931 (Portland City Code provision addressing landowner liability for injuries on sidewalks adjoining land not in conflict with city charter provision also addressing such liability because the latter implicitly provides the city council "with the discretion to make other landowners liable * * * in the exercise of its general authority to exercise all governmental powers" (emphasis added)), with Portland Police Assn. , 292 Or. at 443, 639 P.2d 619 (rule adopted by Portland Civil Service Board addressing hiring practices and allowing the board to consider candidates differently from the exclusive method provided by the charter was "in conflict with the charter" and "beyond the Board's delegated powers"), and Employment Div. v. Ring , 104 Or. App. 713, 718, 803 P.2d 766 (1990), rev. den. , 311 Or. 432, 812 P.2d 827 (1991) (agency could not define "employment" and "wages" differently from statute without conflicting with that statute because legislature fully "established the parameters of each term" in the statute).
*681 Further, the fee provision does not undermine the initiative or expand or restrict the power of the city with respect to the reporting program established by the initiative. As we explained in Advocates II , "the raison d'etre of the Initiative is the establishment of a local system of reporting of the use of hazardous substances." 176 Or. App. at 377, 32 P.3d 228. Nothing in the fee provision hinders the public's access to information from all entities covered by the initiative or otherwise weakens the program adopted by the voters through the initiative. Indeed, the fee provision has no effect whatsoever on which entities must comply with the reporting *1008 requirements in the initiative or on the nature of that compliance.
In sum, we conclude that the city had the authority under Chapter II of the Eugene Charter to enact a hazardous substance user fee to fund the initiative. Further, the fee provision enacted by the city is not subject to the definitional limitations applied to the reporting requirements in the initiative, including the definitions of "facility" and "hazardous substance user." Accordingly, the trial court did not err when it declared that the city's imposition of the fee provision on plaintiffs does not violate sections 2.1 or 3(F) of Amendment IV of the Eugene Charter.
C. Plaintiffs' Fourth Assignment of Error
Under ORS 453.370(9), local community right-to-know programs "may not differentiate between public and private employers." The reporting program and the fee provision both exempt "state and federal facilities" and "public educational institutions" from compliance with their respective requirements.[6] Plaintiffs sought a declaration in their complaint and contended again during the summary judgment proceeding that the exemptions from "reporting" in section 2.2 of the Eugene Charter and "fees" in section 3.692 of the Eugene Code violate ORS 453.370(9). The trial court declared that the city's "imposition of a hazardous substance *682 user fee on plaintiffs does not violate ORS 453.370(9)." However, the court did not declare whether the exemption from the reporting requirement violates that statute.
1. The fee provision is not a "local program" subject to ORS 453.370(9).
We first address whether the trial court erred in declaring that the city's "imposition of a hazardous substance user fee" does not violate ORS 453.370(9).[7] Under that statute, "except as prohibited by federal or state law, a local [community right-to-know] program may not differentiate between public and private employers."[8] A "local program" is defined as
"any law, rule, ordinance, regulation or charter amendment established, enforced or enacted by a local government that requires an employer to collect or report information relating to the use, storage, release, possession or composition of hazardous substances and toxic substances if a primary intent of the law, rule, ordinance, regulation or charter amendment is the public distribution of the information."
ORS 453.307(1).
The fee provision at issue in this case is not a "local program" because it neither requires employers to collect or report information relating to hazardous substances nor requires public distribution of such information. While *683 information about those entities that must comply with the fee provision might be publicly available through other means-for example, public records requests-the fee provision is not designed to *1009 inform the public about the use of hazardous substances by local employers. The sole stated purpose is to establish "the procedures for payment by certain businesses that use hazardous substances of hazardous substance user fees." Eugene Code 3.690. Accordingly, the fee provision is not subject to the limitations on local programs imposed by ORS 453.370(9), and the trial court did not err when it entered a judgment declaring that the imposition of those fees on plaintiffs does not violate that statute.
2. Plaintiffs' challenge to the reporting requirements in the initiative
We turn to plaintiffs' challenge to the reporting requirements in the initiative. Plaintiffs had argued to the trial court that the exemption in the reporting program for "state and federal facilities" and "public educational institutions" amounts to an impermissible differentiation between public and private employers. As described, the trial court did not enter a declaration with respect to the validity of the reporting requirements. While the basis for the trial court's decision not to enter a declaration is not apparent from the judgment or record, we conclude that the court could not have committed error in failing to issue a declaration because plaintiffs lack standing to seek a declaration that the reporting requirements are invalid.
The city contends that plaintiffs lack standing to seek a declaration regarding the reporting requirements-section 5.1-and exemptions-section 2.2-of the initiative. If plaintiffs lacked standing, as the city argues, the trial court would not have had jurisdiction to issue a declaration as to the validity of those sections. See Dept. of Human Services v. B. M. C. , 272 Or. App. 255, 262, 355 P.3d 190 (2015). Whether a plaintiff has standing "largely depends on the statute under which the plaintiff seeks relief." MT & M Gaming, Inc. v. City of Portland , 360 Or. 544, 553, 383 P.3d 800 (2016). In this case, standing under the Declaratory Judgment Act (DJA) is at issue. The relevant provision of the act provides:
*684 "Any person * * * whose rights, status or other legal relations are affected by a constitution, statute, municipal charter, ordinance, contract or franchise may have determined any question of construction or validity arising under any such instrument, constitution, statute, municipal charter, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."
ORS 28.020. Thus, to bring a declaratory judgment action regarding a provision of a city charter-like the initiative's reporting requirements in this case-a plaintiff "must allege the requisite effect on the plaintiff's 'rights, status, or other legal relations.' " DeMartino v. Marion County , 220 Or. App. 44, 50, 184 P.3d 1176, rev. den. , 345 Or. 158, 190 P.3d 379 (2008) (quoting ORS 28.020 ). On summary judgment, plaintiffs can demonstrate that they have standing to seek a declaratory judgment based on the allegations of their complaint and affidavits describing with specificity any "plausible [and] concrete ramifications" of the challenged provision for plaintiffs, among other things. League of Oregon Cities v. State of Oregon , 334 Or. 645, 659-60, 56 P.3d 892 (2002).
The Oregon Supreme Court has identified three considerations that determine whether a plaintiff has standing to bring a declaratory judgment action under ORS 28.020. First, "the plaintiff must establish that the challenged law causes 'some injury to or impact upon a legally recognized interest of the plaintiff's, beyond an abstract interest in the correct application or the validity of [the] law.' " MT & M Gaming, Inc. , 360 Or. at 554, 383 P.3d 800 (quoting Morgan v. Sisters School District #6 , 353 Or. 189, 195, 301 P.3d 419 (2013) ). Put differently, "[i]t is not sufficient that a party thinks an enactment or a decision of a government entity to be unlawful. The standing requirements of ORS 28.020 require that the challenged law must affect that party's rights, status, or legal obligations." Morgan , 353 Or. at 195, 301 P.3d 419 (emphasis in original).
Second, in addition to showing an "injury or impact" on a legally recognized interest, a plaintiff "must show that the claimed injury or impact is real or probable, not hypothetical or speculative." MT & M Gaming, Inc. , 360 Or. at 555, 383 P.3d 800. As the Supreme Court explained in Morgan , courts cannot *1010 issue declaratory judgments in disputes based on *685 "contingent or hypothetical events" rather than "present facts." 353 Or. at 195-96, 301 P.3d 419 (citing TVKO v. Howland , 335 Or. 527, 534, 73 P.3d 905 (2003) ).
Finally, the plaintiff "must show that a decision by the court will in some sense rectify the injury, i.e. , that it will have a 'practical effect on the rights that plaintiff is seeking to vindicate.' " MT & M Gaming, Inc. , 360 Or. at 555, 383 P.3d 800 (quoting Morgan , 353 Or. at 197, 301 P.3d 419 ). Unless the relief that the plaintiff seeks would "redress the injury that is the subject of the declaratory judgment action," a court cannot enter a declaratory judgment in the plaintiff's favor, because such a declaration would "amount to no more than an advisory opinion." Morgan , 353 Or. at 197, 301 P.3d 419.
In this case, the injury that is the subject of plaintiffs' declaratory judgment action is the city's allegedly unlawful exaction of hazardous substance user fees under the Eugene Code. Plaintiffs' challenge to the initiative's reporting program appears to be premised on the contention that the city is using those fees to support a program that is itself inconsistent with state law, at least to the extent that section 2.2 of the initiative exempts state and federal employers and public educational institutions.
Based on the foregoing, we conclude that plaintiffs have failed to identify a real or probable injury to their own interests. They also have failed to demonstrate that the declaration that they seek would redress the harm they have identified. First, plaintiffs are not subject to the initiative's reporting program. Plaintiffs are not currently required to report and present no argument or point to any evidence that they will be required to report in the near future. Therefore, their challenge to that program based on an alleged inconsistency with state law is, in effect, an effort "merely to vindicate a public right to have the laws of the state properly enforced and administered." Morgan , 353 Or. at 195, 301 P.3d 419 (citing Eacret et ux. v. Holmes , 215 Or. 121, 125, 333 P.2d 741 (1958) ). In other words, regardless of whether aspects of the reporting program are inconsistent with state law, plaintiffs in this case failed to present evidence that they have suffered any real or probable injury as a result of the operation of that program.
*686 Second, plaintiffs have not identified how a declaration that the reporting program is invalid would rectify their alleged injury, namely their past or future obligation to pay a hazardous substance user fee. As we explained in Advocates II , the funding source for the initiative was validly severed from the initiative itself. 176 Or. App. at 377-78, 32 P.3d 228. The logical implication of our decision in that case is that the reporting program that remained in the initiative and the fee provision subsequently adopted by the city are distinct schemes, such that one can exist without the other. Plaintiffs have not demonstrated that the city would be obligated to cease its collection of hazardous substance user fees if the trial court were to declare certain aspects of the reporting program invalid or that any such declaration would alter the manner or extent to which the city currently assesses or has assessed hazardous substance user fees on plaintiffs. The mere possibility that such a declaration would affect plaintiffs' past or future obligation to pay the hazardous substance user fees is the kind of hypothetical outcome that falls short of the requirement that the trial court's declaration of rights have a "practical effect on the rights that plaintiff is seeking to vindicate." See Morgan , 353 Or. at 197, 301 P.3d 419.
III. CONCLUSION
To conclude, the trial court did not err when it declared that the city's imposition of the hazardous substance user fee on plaintiffs does not violate ORS 453.402(6), section 2.1 and section 3(F) of Amendment IV of the Eugene Charter, or ORS 453.370(9). The trial court also did not err when it did not declare whether the city violated ORS 453.370(9) by exempting certain public entities from the initiative's reporting program, because plaintiffs lacked standing to seek a declaration to that effect.
Affirmed.

SIC stands for Standard Industrial Classification, a numeric code assigned to business establishments to identify the primary business thereof.

It is true that the fee provision defines a hazardous substance user, in part, as any business that "uses any quantity of hazardous substances," but the provision would mean the same if it applied to any business that "uses hazardous substances" and omitted the reference to quantity.

Article XI, section 2, provides that "[t]he legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon."

The definition of "facility" in both the initiative and the fee provision contains an exception for "state and federal facilities" and "public educational institutions." That exception in the fee provision is the subject of plaintiffs' fourth assignment of error, which we resolve below.

Both the initiative and the fee provision apply only to facilities with a SIC designation between 20 and 39.

The reporting program in the initiative "shall not apply to state and federal facilities; and public educational institutions." Eugene Charter § 54(2.2). Similarly, the fee provision in the city code applies to all entities that meet the definition of a hazardous substance user "except state and federal facilities and public educational institutions." Eugene Code 3.692.

At summary judgment, plaintiffs asserted that they have standing to seek a declaration that the fee provision is invalid based on a conflict with ORS 453.370(9). Specifically, plaintiffs argued that, by impermissibly exempting certain public entities from the fee provision, the city is requiring plaintiffs to pay more than their share of the total cost of the programs under the initiative, which are funded through the fee provision. The city, for its part, does not contend that plaintiffs lack standing to seek a declaration as to the validity of the fee provision itself. If plaintiffs lacked standing in the trial court, the court would lack jurisdiction to act on plaintiffs' requested declaration. Dept. of Human Services v. B. M. C. , 272 Or. App. 255, 262, 355 P.3d 190 (2015). We conclude that plaintiffs' assertion of proportional overpayment compared to other hazardous substance users is sufficient to establish standing. See Savage v. Munn , 317 Or. 283, 292, 856 P.2d 298 (1993) (concluding that the plaintiff property owners had standing to challenge a tax measure based on an allegation that the measure "will have the effect of making them pay proportionally more" than owners of similarly assessed properties in the same jurisdiction).

Assuming that the initiative does differentiate between public and private employers, the city has not pointed to any federal or state law that might "prohibit" it from not differentiating between the two in the manner that it does.